[Civ. No. 12820.  First Dist., Div. One.  Oct. 22, 1945.]

ED RIVERA, Appellant, v. WELLS P. GOODENOUGH, Respondent; INDUSTRIAL INDEMNITY EXCHANGE (an Interinsurance Exchange), Intervener and Appellant.

224

L. F. Hobbs for Appellant.

Robert G. Partridge and Remington Low for Intervener and Appellant.

J. Hampton Hoge and George Olshausen for Respondent.

PETERS, P. J.—Plaintiff was employed as a carpenter by Summerbell Roof Construction Corporation. That company had a subcontract with defendant Goodenough, the general contractor, to construct and install certain trusses to support the roof of a warehouse being built for the Sutter Packing Company by defendant. While installing the trusses plaintiff was injured when one of the posts erected by defendant to support the trusses fell over while plaintiff was working on a ladder braced against the post. Plaintiff in intervention is Summerbell's compensation carrier. The theory of the action is that defendant negligently erected and braced the post, which negligence proximately caused the injuries of which complaint is made. Defendant denied that he was negligent and affirmatively pleaded contributory negligence on the part of plaintiff. The cause was tried before a jury. A verdict was rendered for defendant. From the judgment entered on the verdict plaintiff and plaintiff in intervention appeal.

The warehouse under construction was about two hundred and fifty feet long and one hundred and sixty feet wide. The exterior walls were to be of reenforced concrete, and the roof of tar and gravel. Running north and south down the center of the building, and along both sides, were rows of posts to support the trusses. Under the terms of the contract between

Summerbell and defendant it was the duty of the defendant to erect and brace these posts. The trusses were to be constructed by Summerbell and to be installed by it on the tops of these posts. The posts were ten inches square and twenty feet apart. Each weighed close to five hundred pounds. Two metal saddles were bolted to the top of each post, forming a channel into which the ends of the trusses were to be bolted. Each post was set in a metal plate embedded in a concrete base. This base extended three and one-half feet above the floor and was sunk four feet into the ground. The tops of the posts were twenty-seven feet above the floor level. To hold the posts plumb, and to keep them in position while the trusses were being installed, each post was braced by defendant. To accomplish this, a two-by-four pointed stake twenty-six to thirty inches long was driven into the ground west of each post. This stake was driven to the "point of refusal," i. e., to the point where the stake could not be driven further without splitting. The depth varied dependent upon soil conditions. Defendant fixed the proper depth at from fifteen to eighteen inches, while other witnesses fixed it at a slightly less distance. A two-by-four stringer was nailed about three or four feet from the top of each post on the north side extending diagonally down to the stake to which it was nailed with four-inch spikes. Another two-by-four was nailed to the bottom of the post just above where it came into contact with the concrete base, and it too was nailed to the stake. This stringer was nailed to the south side of the post and stake. If any stake was not securely embedded in the ground, when the spikes were driven into the stake, the force exerted would loosen the stake and it would be replaced. In addition to this bracing a two-by-six "ribbon" was nailed from one post to the next about three or four feet from the top of each post. This ribbon was nailed to the east side of the posts. There was no stake bracing of any kind on the east side of the posts, the evidence being to the effect that the east side of the posts had to be kept clear to install the trusses.

All of the posts had been installed and braced on the day of the accident. Plaintiff, together with others of his crew employed by Summerbell, was engaged in installing the trusses. Each truss was sixty-three feet long and weighed over fifteen hundred pounds. The end of each truss was equipped with a shoe which fitted into the saddle on the top of the post to which it was bolted. In installing a truss a

movable boom elevated it to a position above the tops of the posts where two employees of Summerbell, working from ladders, one at the post at the wall of the building and one at the corresponding post in the center of the building, fitted and bolted the ends of the truss into their saddles. Six trusses had been so installed before the accident. The accident occurred while the seventh truss was being installed. Plaintiff testified that he performed his part of the job the same each time.

■ The seventh truss was elevated into position above the posts. Plaintiff and his witnesses testified that it did not strike the posts. There was substantial evidence, however, that after the accident the saddles on post number seven were badly bent, from which it could reasonably be inferred that the truss did hit the pole. This clearly was a jury question.

■ Plaintiff testified that on the preceding posts, and on the seventh post, he placed his ladder against the southwest corner of the post at an angle of forty-five degrees. He testified that this was the only practical place to put his ladder—that it could not be placed against the west side because of the braces, nor against the north or south side because of the ribbon, nor against the east side because he would then be working directly under the overhanging truss. He also testified that the ladder could not be placed against the ribbon because the ribbon was too low and he would overbalance the ladder. It should be here noted that by placing the ladder against the southwest corner of the post, when plaintiff ascended the ladder the weight of the ladder and plaintiff's weight (in excess of two hundred and thirty pounds) were exerted against the post in a direction that would naturally have a tendency to pull against the stake bracing, and would have a tendency to pull the stake from the ground. In other words, such weight was exerted towards the unbraced side of the post. Had the ladder been placed against the east side of the post or against the ribbon it would have had a tendency to push against the stake and force it deeper into the ground. Several of the defendant's witnesses, all carpenters of many years' experience, testified that placing the ladder against the southwest corner of the post was an obviously unsafe procedure and that it would have been practical to place the ladder against the east side of the post or ribbon. They flatly contradicted plaintiff's assertion that such procedure was not practical or that the ribbon was too low to permit this to be done. The question as to whether plaintiff exercised

due care for his own safety was clearly one of fact for the jury and its implied finding that he did not cannot be disturbed.

Plaintiff ascended the ladder and when he was a few feet from the top he felt the post give way. He tried to descend and then was forced to jump. He thus received the injuries for which this action was instituted.

When the post fell it struck a pile of lumber and came to rest with its top sticking up in the air. It is a reasonable inference that the top of the post did not hit the ground or the lumber, and that the bending of the saddles on the post must have occurred from the truss striking the post. When the post fell, the bracing stake pulled out of the ground, the two-by-four stringers remaining attached thereto.

One of the witnesses for plaintiff, a fellow workman employed by Summerbell, testified that after the accident he measured from the point of the stake to the place where the two-by-four stringer was nailed to it and that the distance was but seven inches. This would indicate that the stake was driven into the ground not over that distance. It is plaintiff's theory that this was negligence and the proximate cause of the accident. It is his contention that since the stake was driven in but seven inches, and that since the evidence shows that it should have been driven in at least fifteen inches, defendant was guilty of negligence as a matter of law and that such negligence proximately caused the accident. Emphasis is placed on the rule that plaintiff was a business invitee, and that the duty of care which defendant owed to him required consideration of the type of work to be performed by him in installing the trusses. (*Muskin* v. *Gerun,* 46 Cal.App.2d 404 [116 P.2d 105].)

The difficulty with the argument of plaintiff is that it disregards the conflicting testimony of defendant's witnesses. It is true that no witness for defendant measured the stake after the accident to ascertain how deeply the stake had been embedded. But several of the witnesses were of the opinion that the stake had been driven in twelve to fourteen inches. They based their estimates on observation of how much of the stake remained out of the ground after it had been driven. Several witnesses testified that it looked like the other stakes; that it had been driven to the point of refusal; that it would have been useless to drive it further because it would have split. The carpenter who nailed the two-by-four stringers to

the stake testified that stake number seven was solid when he drove in the spikes, and that this indicated it was driven in deep enough. Under the circumstances, it was clearly for the jury to determine whether the post fell because of defective bracing, or because it was hit by the truss, or as a result of a combination of the two. Its implied finding that the bracing was not defective is amply supported by competent and substantial evidence.

The record also abundantly supports the jury's implied finding that plaintiff was guilty of contributory negligence in placing the ladder as he did. As already pointed out, there was competent substantial evidence that placing the ladder on the southwest corner was obviously unsafe and dangerous, and that it was practical to have placed it elsewhere. A clearer case for the jury on this issue can hardly be imagined. An appellate court has no power to disturb a judgment when the conclusion reached by the jury is supported by substantial evidence, contradicted or uncontradicted, or by reasonable inferences from that evidence. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) This rule applies with equal force to verdicts in favor of a defendant as well as to those in favor of a plaintiff.

Plaintiff directs numerous allegations of error at the instructions, and contends that the jury was over-instructed in favor of the defense, citing *Muskin* v. *Gerun*, 46 Cal.App. 2d 404 [116 P.2d 105]. We have read the entire charge. On the whole, the jury was fully, fairly and correctly instructed on all basic issues. While there were some minor errors in language used, and some of the instructions use somewhat awkward language, none of the errors was substantial and certainly none was prejudicial.

At plaintiff's request the jury was properly instructed as to the legal rights of invitees and the duties of an occupant toward such invitees. The court modified one such proffered instruction by adding to it the proper statement that the responsibility of one having control of the premises is not absolute, and then stated that it was the duty of the "owner" of the premises to warn the invitee of hidden dangers of which he has or should have knowledge, but that "the one extending the invitation" is under no duty to warn the invitee of obvious dangers. Plaintiff contends that under this instruction the jury was told that only the owner—the Sutter Packing Company, not a party to this action—was under a

duty to warn the invitee of nonobvious dangers. Impliedly, according to plaintiff, the jury was told that a mere occupant, such as defendant, owed no such duty to plaintiff. A reading of the instructions as a whole shows that the words "owner," "occupant," and "the one extending the invitation" were used consistently by the court to refer to the defendant. Although the use of the word "owner" was unfortunate, the jury could not have been materially confused and no prejudice could have been suffered.

Plaintiff contends that it was error to instruct that the status of an invitee may be lost if the person exceeds the scope of the invitation. It is the theory of the plaintiff that, although this was a correct statement of the law, to so instruct was error for the reason that there was no evidence that plaintiff's status was anything less than that of invitee. Plaintiff submitted, and the court gave instruction number 7 which dealt with the differences between a licensee and invitee, and the differences in the duties owed to them at the time of his entrance to the premises. The challenged instruction dealt with how the status of invitee may be lost after entrance to the premises. The two instructions would seem to be complementary. Plaintiff having submitted an instruction dealing with the rights of licensees as well as invitees cannot complain that the court more fully instructed on the issue thus presented. Although it is error to instruct on issues without evidentiary support a litigant cannot complain of error he himself invites. (3 Am.Jur. § 880, p. 432.) Moreover, a reading of the record demonstrates that the entire case was tried on the theory that plaintiff was an invitee and this was not seriously challenged by defendant. The jury could not have been confused by the instruction.

Plaintiff next urges that the court failed to instruct that the *quantum* of care required of the invitor is proportionate to the danger, and in this connection sets forth three requested instructions that were refused, numbered by plaintiff 10, 27 and 28. Proffered instructions 27 and 28 were properly refused because covered by given instructions 13 and 41. Requested instruction 10 dealt directly with the principle that the *quantum* of care varies with the danger to be apprehended. The instruction undoubtedly stated a correct principle of law and properly could have been given. There was no other instruction as clear as the proffered one on the issue involved. In instruction 40 the jury was told, however, that "defendant was

required to use ordinary care to erect and maintain said pole in a reasonably safe condition for the use reasonably required thereof by plaintiff.'' By necessary inference this instruction embodied the principle of the refused instruction. Unlike the case of *Muskin* v. *Gerun*, 46 Cal.App.2d 404 [116 P.2d 105], where the jury was merely instructed that defendant was under a duty to exercise reasonable care, and where no instruction was given that such reasonable care depended on the nature of plaintiff's work, and where failure to so instruct was one of the grounds upon which a reversal was predicated, in the instant case the jury was told that the duty of defendant was to erect and maintain the pole ''in a reasonably safe condition for the use reasonably required thereof by plaintiff.'' While the instruction proffered by plaintiff covered the issue more clearly than did the one given, inasmuch as the principle was covered by the instructions, we cannot hold that it was prejudicial error to have failed to have elaborated on the issue.

■ Objection is made to the language employed in instruction 31 dealing with the principle that the defendant as general contractor was not liable for the negligence, if any, of Summerbell, as subcontractor. Plaintiff has misconstrued the language of the instruction. The instruction, somewhat awkwardly it is true, told the jury that defendant was not liable for Summerbell's negligent acts. That is a correct statement of the law.

■ It is also urged that error was committed in refusing to give requested instruction numbered 16, to the effect that a workman is not negligent in being where his work requires him to be unless a reasonable man similarly situated would not have worked at such a place under the circumstances. This instruction was a negative one on the doctrine of assumption of risk, and also involved certain elements of contributory negligence. Assumption of risk had not been specially pleaded by the defendant, and that issue was not submitted to the jury. So far as the issue of contributory negligence is concerned, all the elements contained in the proffered instruction were covered elsewhere by instructions 19 and 20.

■ Plaintiff next objects that instruction numbered 29 required too great a degree of care of plaintiff in stating that he was under the duty of exercising ''the care and caution and skill that would be exercised by an ordinarily prudent, cautious and skillful person, acting under like circumstances.'' The objection is to the element of ''skill'' included within the

instruction, the contention being that while a defendant is liable for want of ordinary care and skill, a plaintiff is barred only by want of ordinary care. This contention is based on the somewhat awkward phraseology of section 1714 of the Civil Code. That section provides that everyone is liable "for an injury occasioned to another by his want of *ordinary care or skill* . . . except so far as the latter has, willfully or by *want of ordinary care,* brought the injury upon himself." (Italics added.) In spite of the difference in the language of the section in referring to the degree of care required of the plaintiff and defendant it is well settled that the conduct of the plaintiff is governed by the same standards as are applicable to defendants. (See cases collected 19 Cal.Jur., p. 577, footnote 10.) Any other rule would be discriminatory and unsound.

▆▆▆ Objection is made to instruction 32 on proximate cause, and plaintiff also contends it was error to refuse to give certain instructions offered by him on this issue. The issues involved in the refused instructions were covered by instructions 13 and 41. As we read instruction 32 it simply told the jury that if the post fell because it was hit by the truss, and if the defendant's negligence did not contribute to the fall of the pole, the verdict should be for defendant. That is a correct statement of the law.

▆▆▆ Plaintiff also urges that his proposed instruction 19 on the doctrine of sudden peril should have been given. He claims evidentiary support for such an instruction because of his testimony as to what he did after the ladder began to fall. While the giving of the instruction would probably have been proper, it cannot be said that the refusal to give it was prejudicial. There was no suggestion or contention that plaintiff's conduct after the ladder started to fall was negligent or contributed to the accident. Under such circumstances, the failure to instruct on the immaterial issue cannot be held to have been error.

▆▆▆ Plaintiff's final contention is that the court erred in refusing a requested instruction on Code of Civil Procedure, section 2061(7) to the effect that where it is within the power of a party to produce stronger evidence than that which is offered on a material point, weaker evidence than that offered should be viewed with distrust. Plaintiff contends that proper occasion existed for giving the requested instruction because of defendant's failure to produce the stake or to produce evidence of measurements made of the stake.

A somewhat similar provision of section 2061 found in subdivision 4 was held to be unconstitutional in *Hirshfeld* v. *Dana,* 193 Cal. 142 [223 P. 451], on the ground that it authorized the court to make an unlawful charge on the facts. Defendant contends the same rule applies to subdivision 7 of the section and that the constitutional amendment (art. VI, § 19) giving the court power to comment on the evidence is applicable only to criminal cases. The rule of the Hirshfeld case was specifically overruled in *People* v. *Dail,* 22 Cal. 2d 642, 656 [140 P.2d 828], where it was held that regardless of the constitutional provision such cautionary instructions are proper. ▉ The contention that the constitutional amendment does not apply to civil cases clearly lacks merit. The constitutional provision is self-executing and contains no language limiting its operation to criminal cases. For these reasons it is quite apparent that in a proper case the proffered instruction should be given. ▉ In the instant case defendant's witnesses all testified that no measurements of the stake were taken by them. Obviously, therefore, the failure to produce that testimony was explained. The stake was not produced, it apparently having been lost shortly after the accident. Under these circumstances failure to give the proffered instruction cannot be held to have been prejudicial. The reasons why defendant did not, and could not, produce stronger evidence were so clearly before the jury that it could not possibly have been confused or misled by the failure to instruct on this issue. The record shows that defendant produced at the trial the strongest evidence available to him. For these reasons the error, if error it was, in refusing to give the instruction cannot be held to have been prejudicial.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.