[L. A. No. 21336.   In Bank.   May 23, 1950.]

LOUISE ORNALES, Appellant, v. MYRTLE E. WIGGER, Respondent.

Marcus, Rabwin & Nash and Robert M. Newell for Appellant.

Bauder, Gilbert, Kelly, Thompson & Veatch and Patrick H. Ford for Respondent.

CARTER, J.—Plaintiff sued for damages for personal injuries sustained by her as the result of an accident which occurred at about 6:30 p. m. on December 24, 1946, at the intersection of Main and Workman Streets in the city of Los Angeles. Main Street runs from north to south, is 50 feet wide and has streetcar tracks on either side of the single center line. Workman Street intersects with Main, runs east and west and is 35 feet in width. At night, the intersection is illuminated by a double street light at the northwest corner, and single street lights on the southeast and southwest corners. There are marked crosswalks at the intersection for pedestrian use.

It was raining on the night of the accident, and plaintiff,

Louise Ornales, who was dressed in black and who was carrying an umbrella, was proceeding toward a grocery store on the northwest corner of the intersection. At the time there was little or no vehicular traffic on Main Street, and Mrs. Ornales was walking approximately in the center of the northerly marked crosswalk and was about three-fourths of the way across the street when the accident occurred. Mrs. Ornales testified that she looked in both directions before she started to cross the street and that she looked again just after she crossed the center line. She had taken two or three additional steps when she was struck by, or walked into, an automobile driven by defendant, Myrtle E. Wigger. Mrs. Wigger, accompanied by her husband, was driving a 1931 Ford sedan in a southerly direction on Main Street at a speed of about 15 or 20 miles an hour. The lights of the car were on low beam. At the time of the accident the car was about half way between the streetcar tracks west of the center line and the western curb of Main Street. The defendant, Mrs. Wigger, testified that she did not see Mrs. Ornales prior to the accident and that all she had seen was a black parasol going by the left-hand window of the car and that she had heard a scream. After the accident, Mrs. Ornales was lying in the marked crosswalk close to its southern boundary. Mr. and Mrs. Wigger and a neighbor boy carried the injured woman to the porch of a nearby house where the Wiggers unsuccessfully tried to obtain an ambulance by telephone. Finally, the Wiggers drove Mrs. Ornales to the General Hospital where it was ascertained that she had received a fracture of the skull, a 2-inch cut on her right temple, severe bruises on her right elbow and knee, and other injuries.

During the trial before a jury, plaintiff's motion for a directed verdict was denied. The jury returned a verdict for defendant, and plaintiff then made a motion for judgment notwithstanding the verdict and for a new trial, both of which were denied by the court. Plaintiff's appeal is based on the following contentions: (1) That the instruction given by the court on the effect of a violation of section 560(a) of the Vehicle Code was prejudicial error; and (2) that the court over-instructed the jury with respect to contributory negligence; and (3) that the trial court's failure to instruct the jury properly on the meaning and effect of certain impeaching evidence was prejudicial error.

Section 560(a) of the Vehicle Code provides that "The driver of a vehicle shall yield the right of way to a pedestrian

crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter." (No exception is here involved.)

The instruction given by the trial court is as follows:

"Even though you may find in this case from a preponderance of the evidence that one of the parties violated one or more sections of the Vehicle Code of the State of California, you are instructed that the proof of such violation raises only a rebuttable presumption that he or she was negligent, and that such presumption is not conclusive and may be overcome by other evidence showing that under all of the circumstances surrounding the event the conduct in question was excusable, justifiable and such as might reasonably be expected from a person of ordinary prudence. In this connection you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes not of his own intended making induce him without moral fault to do otherwise.

"You are further instructed that a violation of law is of no consequence in this action unless it was the proximate cause of, or contributed in some degree as the proximate cause of, injuries found by you to have been suffered by the plaintiff."

It is plaintiff's contention that there was no evidence in the record to justify the portion of the instruction which permitted the jury to determine that defendant's violation of the code section was excusable or justifiable under the holding of the majority in *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]. It is plaintiff's position that the jury should have been instructed that defendant was negligent as a matter of law.

In the Satterlee case it was held that "An act which is performed in violation of an ordinance or statute is presumptively an act of negligence, but the presumption is not conclusive and may be rebutted by showing that the act was justifiable or excusable under the circumstances. Until so rebutted it is conclusive. [Citing cases.] However, the fact which will excuse the violation of a statute has been defined by the court as one resulting 'from causes or things beyond the control of the person charged with the violation'. [Citing cases]." (*Satterlee* v. *Orange Glenn School Dist., supra,* p. 589.) And, on page 590: "In the application of this rule each violation of a statutory requirement must be considered

in connection with the surrounding circumstances. Ordinarily, the excuse relied upon by the violator presents a question of fact for the jury's determination. As stated in *Scalf* v. *Eicher, supra,* p. 54 [11 Cal.App.2d 44 (53 P.2d 368)]: 'Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether the violation was excusable or justifiable are questions of fact except in a case where ". . . the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury." ' "

A search of the record reveals that the only instruction requested by the plaintiff with reference to section 560 (a) of the Vehicle Code was the section itself. This was given, as requested, by the trial court. ■ Ordinarily, before an appellant may complain of the lack of an instruction, he must have made a request that the charge be made more specific, or ask for qualifying instructions. This general rule is apparently qualified by the rule that an appellant may complain, in the absence of such request, where the instruction given erroneously states the applicable law and prejudice is suffered thereby. (*Lane* v. *Pacific Greyhound Lines,* 26 Cal. 2d 575, 587 [160 P.2d 21]; *Tabata* v. *Murane,* 24 Cal.2d 221 [148 P.2d 605]; *Colgrove* v. *Lompoc etc. Club,* 51 Cal.App.2d 18 [124 P.2d 128].) The instruction given differs very slightly from Instruction 149 (BAJI) which reads as follows: "Conduct which is in violation of (applicable code section) just read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he (or) (she) was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault to do otherwise." This instruction (149, BAJI) was approved by this court in *Combs* v. *Los Angeles Railway Corp.,* 29 Cal.2d 606, 610 [177 P.2d 293]. In the instant case an instruction was given defining a presumption: "A presumption is a deduction which the law expressly directs to be made from particular facts.

Unless declared by law to be conclusive, it may be controverted by other evidence, direct or indirect; but unless so controverted the jury is bound to find in accordance with the presumption.''

█ Undoubtedly the instruction given on the effect of a violation of a statute should have been qualified by an instruction on the type of evidence necessary to rebut the presumption of negligence. In the Satterlee case it is said that ''. . . the fact which will excuse the violation of a statute has been defined by the court as one resulting 'from causes or things beyond the control of the person charged with the violation.' '' The trial court need not of its own motion give special instructions in the absence of a request therefor by counsel. (*Comstock* v. *Morse*, 107 Cal.App. 71 [290 P. 108] ; *Crooks* v. *White*, 107 Cal.App. 304 [290 P. 497] ; *Sherman* v. *Kirkpatrick*, 83 Cal.App. 307 [256 P. 570].) In *Baldridge* v. *Cunningham*, 31 Cal.App.2d 128, 132 [87 P.2d 369], where the violation of certain provisions of the Vehicle Code was involved, it was said ''If defendant Cunningham desired a further elaboration upon the instruction relative to the *quantum* of evidence necessary to establish justification or excuse, and thereby rebut the presumption of negligence arising from a violation of the California Vehicle Code, it was her duty to propose the further instruction which she desired and request the court to give it. This she did not do. (*Maus* v. *Scavenger Protective Assn.*, 2 Cal.App.2d 624, 629 [39 P.2d 209].)'' (See, also, *James* v. *Myers*, 68 Cal.App.2d 23 [156 P.2d 69], and the cases there cited.)

Plaintiff, however, requested no qualifying instruction as to the type of evidence necessary to rebut the presumption of negligence. Defendant maintains that ''if there was any error in submitting the issue of negligence to the jury, plaintiff invited the error by requesting other instructions on the same issue, and is not in a position to complain thereof.'' It appears from the record that plaintiff invited the court to submit the issue of negligence to the jury in some 15 separate instructions, 10 of which were given. As we have previously pointed out, none of these instructions touched on the effect of the violation of such a statute as the one under consideration, or upon the type of evidence necessary to excuse the violation of such a statute.

█ Defendant testified that she did not see plaintiff, that when she was entering Workman Street ''I saw a parasol go up like that at my window, at the left, and heard a woman scream

and I looked; I didn't see anybody so I knew there was nothing in front of me and I was already in the cross street so I was going to stop . . ." The record shows that the wind was blowing on the night of the accident and that it was raining. This atmospheric condition, together with the fact that plaintiff was dressed in dark clothing and was carrying a black parasol or umbrella could be considered by the jury as evidence to rebut the presumption of negligence arising from defendant's violation of the statute. Certainly, the weather, the darkness and plaintiff's attire were all matters beyond the control of defendant. It was held in the Satterlee case that "the issue as to whether the circumstances were such as to excuse violation" should be left to the trier of the fact. It would seem that, under the circumstances of this case, the instruction correctly stated the law. (*Mathers* v. *County of Riverside,* 22 Cal.2d 781 [141 P.2d 419]; *Fennessey* v. *Pacific Gas & Elec. Co.,* 20 Cal.2d 141 [124 P.2d 51]; *Johnson* v. *Griffith,* 19 Cal.2d 176 [120 P.2d 6]; *Fietz* v. *Hubbard,* 59 Cal.App.2d 124 [138 P.2d 315]; *Prescott* v. *City of Orange,* 56 Cal.App.2d 144 [132 P.2d 523]; *Finney* v. *Wierman,* 52 Cal.App.2d 282 [126 P.2d 143]; *Henslee* v. *Fox,* 25 Cal.App. 2d 286 [77 P.2d. 307]; *Rath* v. *Bankston,* 101 Cal.App. 274 [281 P. 1081].)

Plaintiff cites no authority for her contention that the jury was over-instructed on the issue of contributory negligence. The same point has been raised in other cases where it was held that reversible error was not shown since the instructions did not state the law incorrectly. (*Muskin* v. *Gerun,* 46 Cal.App.2d 404 [116 P.2d 105]; *O'Brien* v. *Edens,* 125 Cal.App. 100 [13 P.2d 754]; *Estate of Keithley,* 134 Cal. 9 [66 P. 5].) The record shows that there is evidence which warranted an instruction on contributory negligence. Mrs. Wigger, the defendant, testified that the plaintiff's breath was very strong of liquor. Although this was denied by plaintiff, Mr. Trujillo testified to the same effect. Mrs. Wigger also testified that Mrs. Ornales had said "Well, it is no more your fault that mine, I didn't see you. I had the parasol down in front of me coming across the street." This was emphatically denied by the plaintiff. Mr. Wigger testified that the next day he noticed that the stem of the rear view mirror, which was fastened on the front frame of the left door of the car, was bent. From this evidence it could be inferred that plaintiff walked into the side of defendant's car and received her injuries in that way.

The neighbor boy, Hector Barrere, plaintiff's witness, testified that he was about 50 feet from the scene of the accident when he heard a bump; that he walked to the intersection and helped Mr. Wigger carry the injured woman to the porch of a house nearby. He testified that the owners of the house, a Mr. and Mrs. Trujillo, were there. Defendant's attorney asked the witness (Barrere) if he had talked with Mrs. Trujillo. "A. No, I didn't talk to her but I know her good; I didn't talk to her. Q. . . . Did you tell Mrs. Trujillo that Mrs. Ornales walked into the side of a car ?'' This was objected to as hearsay and defendant's attorney stated that he was laying a foundation for impeachment. At this point, counsel approached the bench and a conference was had outside the hearing of the jury. The court then stated that "I am admitting this for the purpose of impeachment if it is so." Plaintiff contends that at the conference before the bench, she requested that the jury be instructed that the evidence was merely for the purpose of impeachment and that it could not be used for probative purposes. Mrs. Trujillo testified that Hector had told her that Mrs. Ornales walked into the side of defendant's car. During this testimony, plaintiff's attorney asked the court to instruct the jury that the evidence was admissible only for the purpose of impeaching plaintiff's witness, Hector Barrere. Mr. Newell (plaintiff's attorney) : "I want to be sure it (impeachment purposes) is understood by the jury. The Court: That is true." There is nothing in the record, other than the testimony cited, to show that plaintiff's attorney requested, and was refused, such an instruction. It would seem, again, that before an appellant may complain of such lack of instruction, he must show that he made such request. (See cases cited *supra*.)

The evidence in this case is in direct conflict, with the exception of the fact that Mrs. Ornales was lying in the marked crosswalk at the intersection of the two streets after the accident. Under the well established rule the resolution of such conflict is for the trier of the fact.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—My views with respect to the instruction approved in this case are set forth in a concurring opinion

in *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 593-601 [177 P.2d 279], and in a dissenting opinion in *Combs* v. *Los Angeles Railway Corp.*, 29 Cal.2d 606, 613-615 [177 P.2d 293]. These views remain unchanged, but since the trial court must instruct the jury in conformity with the majority opinions in those cases, I concur in the judgment.

Appellant's petition for a rehearing was denied June 22, 1950.