[Civ. No. 15518. First Dist., Div. One. Sept. 28, 1953.]

CRYSTAL BISHOP, Respondent, v. JEAN R. REID,
Appellant.

Francis N. Foley for Appellant.

Nicholas Zoller for Respondent.

WOOD (Fred B.), J.—Defendant has appealed from a judgment awarding plaintiff damages for personal injuries sustained by plaintiff when hit by an automobile driven by defendant.

The accident occurred at the intersection of Chestnut and Fillmore Streets, San Francisco. Plaintiff was walking across Fillmore, from the northeast to the northwest corner of the intersection, in a marked pedestrian crosswalk. Defendant, who had been driving in an easterly direction on Chestnut, had just made a left turn and was going north on Fillmore.

The trial court held, as a matter of law, that defendant was negligent and plaintiff not negligent, and so instructed the jury.

Defendant claims this holding and instruction erroneous, upon the ground, asserted by defendant, that there was substantial evidence for the consideration of the jury upon both issues, negligence of the defendant and contributory negligence of the plaintiff. Our examination of the record convinces us there was evidence for the jury on those issues, and that the judgment must be reversed.

■ There were four witnesses to the accident: plaintiff; defendant; Betty Gauger, who had been driving a car southerly on Fillmore toward Chestnut and had just come to a stop at the northerly crosswalk of this intersection; and Festus J. King, a pedestrian who had walked along this crosswalk from west to east, reaching the northeast curb as plaintiff left it, going in the opposite direction.

The accident happened at 10:40 in the evening of November 20, 1951. There were four lights (not signal lights), one on each corner. Plaintiff testified there was a light rain falling, it had been raining harder earlier and the streets were full of puddles. Defendant said it was raining pretty hard, it was dark, and visibility was poor. King also testified that visibility was poor.

Plaintiff testified that she waited for traffic to clear before starting across; there was no traffic in sight in any direction; she could see back 200 feet on Chestnut, several hundred feet northerly on Fillmore, one block south on Fillmore, and about half a block westerly on Chestnut.

Plaintiff said that after leaving the curb she looked continually west while crossing, watching her footing at the same time; she was facing straight ahead, watching in all four directions for cars but probably did not look in a southerly or northerly direction. She was carrying a cane. This was

her first night out after a previous accident. King said that plaintiff had her head inclined toward the ground from the time she left the curb until she arrived at the point of impact.

Plaintiff testified that when she had taken about 10 to 15 steps she saw defendant's car at the west line of the intersection, estimating the speed at 25 to 30 miles per hour; that the car continued on across, coming at a rapid pace without slowing down or stopping and then made a sudden left-hand turn. When the car was within about 10 feet of plaintiff, she could see it was not going to stop and she put up her hand in which she was carrying an envelope, and screamed. Plaintiff watched the car continually until the time of impact.

Defendant testified that when she was 50 feet from the intersection her car was going about 15 miles per hour; when she reached the intersection, 5 miles per hour. As she approached Fillmore she saw a car [the Gauger car] coming south on Fillmore, approaching Chestnut; that car stopped and defendant then went ahead, the other car remaining stopped until she had passed it. She started to make a left turn about the middle of Fillmore, did not recall if she extended her arm when she reached the intersection or when she started to make the turn. She saw plaintiff for the first time when about 5 feet from her. She caught plaintiff in her headlights as she was going north on Fillmore. Her car lights were on and the windshield wipers were on; she was looking right in front of her; her speed was 5 miles per hour at the time she applied her brakes. She heard plaintiff scream and saw her throw up her arm.

Gauger stopped at the intersection and saw defendant's car stop too. Gauger observed defendant's car from the time it entered the intersection until it made the left turn. It was going approximately 7 or 8 miles per hour. It was going at the same speed when defendant was making the left turn and there was no increase in speed up to the point of impact. Gauger had come to a complete stop at the north line of this crosswalk, her car was then about 15 feet from the accident. She first saw plaintiff when defendant's car hit plaintiff; had not seen plaintiff walking across the intersection. King saw defendant's car as defendant was about ready to execute the left turn; as it was making the turn, the car was going about 10 miles per hour. Plaintiff did not see Gauger's car or any car other than defendant's until after the accident.

Plaintiff testified that when hit by the left front part of defendant's car at about the level of her knees, she was tossed

to the left of the car, her body traveling through the air about 3 to 5 feet and landed on the north line of the crosswalk. She had been walking in the middle of the crosswalk. She fell on her left side, her left shoulder and knee were banged. Defendant said she did not observe plaintiff's body leaving the ground and going through the air; instead, that plaintiff went down on her knees and hit her shoulder. Gauger said that plaintiff was not thrown from the front of the car at all; she went to the left of the car and fell to her knees. Gauger did not see plaintiff fall on her side on the pavement. King said that plaintiff's body was not thrown away from the car, and that when her body came to rest she was in a kneeling position; plaintiff was in contact with the car at the time, she could have touched the car. Defendant said that after the impact plaintiff was right near the left front fender, within 5 or 6 inches of it. When defendant got out of her car, plaintiff was not lying in the street, she was half way up; she was in the crosswalk after the impact.

Plaintiff said that when defendant's car came to rest after the impact it was headed northeasterly, straddling the north line of the crosswalk. Defendant testified that plaintiff, at the time of the impact, was about the middle of the crosswalk, and that the car did not travel after the impact, it stopped at once. Gauger said that at the time of the impact defendant's car came to a complete stop; after the impact there was no movement of defendant's car so far as she knew. King testified that defendant's car proceeded into the crosswalk about one-quarter or one-half the width of the crosswalk and at the time of the impact had come to a quick, sudden stop.

This evidence which so patently conflicted at so many significant points (visibility, speed of the car, whether or not plaintiff was observing traffic as she walked across, the force of the impact, whether or not plaintiff was thrown several feet, whether or not the car stopped at the point of impact; to mention a few) presented questions of fact, including the credibility of witnesses, for the jury to decide in determining the issues of alleged negligence of the defendant and alleged contributory negligence of the plaintiff.

It is true that this evidence shows without conflict that plaintiff was hit by defendant's car while plaintiff was crossing within a marked crosswalk, and a statute declares that the "driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, . . .''

(Veh. Code, § 560.) But that does not mean, under the circumstances of this case, that defendant Reid was negligent or that plaintiff was not negligent as a matter of law. It is "settled that disobedience of a statute for which criminal sanctions are imposed is not negligence as a matter of law under all circumstances, but a presumption of negligence arises on proof of such violation, and the presumption can be rebutted by evidence of justification or excuse." (*Tossman* v. *Newman,* 37 Cal.2d 522, 525 [233 P.2d 1]. See, also, *Ornales* v. *Wigger,* 35 Cal.2d 474 [218 P.2d 531], and *Graf* v. *Garcia,* 117 Cal.App.2d 792, 797-798 [256 P.2d 995].)

Of some evidence in the Ornales case, strikingly similar to some of the evidence in our case, the court in that case said: "Defendant testified that she did not see plaintiff, that when she was entering Workman Street 'I saw a parasol go up like that at my window, at the left, and heard a woman scream and I looked; I didn't see anybody so I knew there was nothing in front of me and I was already in the cross street so I was going to stop . . .' The record shows that the wind was blowing on the night of the accident and that it was raining. This atmospheric condition, together with the fact that plaintiff was dressed in dark clothing and was carrying a black parasol or umbrella could be considered by the jury as evidence to rebut the presumption of negligence arising from defendant's violation of the statute. Certainly, the weather, the darkness and plaintiff's attire were all matters beyond the control of defendant. It was held in the Satterlee case that 'the issue as to whether the circumstances were such as to excuse violation' should be left to the trier of the fact." (Pp. 479 and 480 of 35 Cal.2d.)

The judgment appealed from is reversed.

Peters, P. J., and Bray, J., concurred.