[Civ. No. 20493.   Second Dist., Div. Two.   Mar. 15, 1955.]

SIDNEY PERRY PIERCE, Appellant, v. HARRY BLACK, Respondent.

Louis Warren and Eugene E. Glushon for Appellant.

C. F. Jorz and John G. Zelezny for Respondent.

FOX, J.—Plaintiff appeals from an adverse judgment in his action for damages for personal injuries. The accident occurred while plaintiff was standing on the sidewalk near the curb. He was struck by the open door of defendant's car which had been parked at the curb when defendant attempted to start his motor while it was in reverse gear with the clutch not disengaged. This caused the car to lurch backward and its open door, which extended over the sidewalk, struck plaintiff during such movement.

Plaintiff was employed as sales manager by Remington Sewing Machine Company, which maintained offices and a plant on Chico Avenue in El Monte. Shortly before 10 a. m. on June 2, 1952, he left the company offices to go across the street. Defendant was an official of this company.

The exposition of the events leading up to this accident is best recounted by quoting the pertinent testimony of the parties. Plaintiff testified as follows:

"Q. After you left the building, what did you do? A. Well, after I left the building, I proceeded to walk straight out to the curb to cross the street, . . . and I looked to my left, and as I was looking to my left, while I was standing on the curb, I was struck by, . . . the door of the automobile.

"Q. Now, this automobile that you are talking about, did you see this automobile before you were struck? A. I saw an automobile standing there when I first walked out of the building, yes.

"Q. This automobile that you saw, where was it with respect to this exist from which you left? A. Well, it was to the right of me.

"Q. About how far to the right would you say this car was? A. I would say ten or fifteen feet.

"Q. And when you first saw this car, what did you notice about it, if anything? A. I noticed . . . that it was Mr. Black's car, and the car door of the car was open. That is, the front car door on the passenger's side was open, extended over the curb.

"Q. Did you notice whether or not the car was in motion at that time? A. Yes, the car was not.

"Q. The car was not in motion at that time? A. No. . . .

"Q. As you left the building, and as you saw this car, you proceeded to the curb? Is that correct? A. That is correct.

"Q. Did you proceed on across the street? A. No, sir.

"Q. What did you do? A. Well, I walked up to the curb, and I looked to my left; and just as I looked to my left, I was struck. I would say I was about eight or ten inches away from the curb when I looked to my left to see if there was any oncoming traffic, . . . when I was struck. . . .

"Q. Now, from the time you left this building up to the time that you were struck, did you leave the sidewalk at any time? A. No, sir. . . .

"Q. You didn't see your brother-in-law [defendant] in the car? A. No, sir."

Defendant, who was an official of the sewing machine company, gave this version of the events leading up to the accident:

"Q. Directing your attention to . . . June 2, 1952, at about the hour of 10:00 a. m., will you tell us what happened . . . at that time, briefly? A. Well . . . it had been my custom to have some coffee along about 10:00 o'clock or before noon, and I left my office and proceeded towards my car, and I noticed Mr. Pierce [plaintiff] in the vicinity and I suggested to him at that time that he join me in some coffee and we could discuss the results of a trip which he had made on behalf of the company. And I then slid into the seat of my car which was parked——

"Q. From which side of the car? A. From the curb side, sir.

"Q. That is the right side of the car as it was parked? A. It would be the right side as parked, that is correct. . . . And as I did, I left the door open, assuming at that time that Mr. Pierce would follow me. He did approach the car, and bent over, and at that time I said, 'Well, come on, go with me now and we will have some coffee and we can take up other

business as it transpires when we get back.' And it was my impression he planned on entering the car, so I turned on the key and put my foot on the starter, and as I did that, the car lurched backward. I had obviously left the machine in a reverse gear position. And as this happened, Mr. Pierce was framed in the doorway. That is about the best way I can describe it.

"Q. In other words, he was in the doorway of the car when this happened, getting in the car, and you were going to get coffee? Is that it? A. . . . He was standing on the curb, and when I say 'framed in the doorway' what I mean is that the door stands ajar and he was right in alongside the door, not in the car. He hadn't entered the car as yet, . . . that is what I mean when I say 'framed.' He was against the door. The door was standing ajar, and he was standing there in a sort of bent over position. And I had the impression that he planned to enter the car at that moment, and that is when I hit the starter, and the next thing I knew of, the car lurched back and Mr. Pierce then appeared to be falling. And I hit the button on the brake and tried to stop as quickly as I could because I didn't know what was happening at that time. And as I did that, it seemed he sort of jounced around back and forth and fell into a prone position to the sidewalk. . . .

"Q. *When you began to start your automobile, did you look to notice whether the car was in gear? A. No, I assumed it wasn't.* I don't know why—I just didn't think of it. I just assumed I was going to start the car, so I turned the switch on and hit the button, which I customarily do." (Italics added.)

"Q. As related to the outside of the door and the inside of the door, would you say that the inside of the door struck Mr. Pierce? . . . A. Yes, the part of the door which would swing to and close you into the car. . . .

"Q. After you attempted to start your automobile, did your car start to move? A. It did.

"Q. In which direction? A. In a reverse direction. . . .

"Q. Did you see this door strike Mr. Pierce? A. Yes, sir, because as I say, I looked to see whether he was entering the car, and I assumed he was, and I, *not realizing I was in reverse, I thought it was perfectly safe to start the car at that time.* (Italics added.)

"Q. After the door struck Mr. Pierce, what happened to Mr. Pierce himself? A. He fell . . . [to the sidewalk]."

The issues in this case are: (1) Was defendant guilty of

negligence; and (2) is there any evidence of negligence on plaintiff's part which would justify giving an instruction on contributory negligence. The cases are legion which announce the settled principles that these questions are ordinarily for the jury to determine and such determination will not be disturbed upon appeal if the record discloses any substantial evidence or reasonable inferences in support thereof.

Nonetheless, though a reviewing court may not weigh the evidence, it must examine the evidence upon which the jury has predicated its determination, and if the circumstances of the case, as developed by the evidence, point irresistibly to but one reasonable conclusion, then the issues of negligence and contributory negligence become questions of law. (*Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 183 [258 P.2d 834] ; *LeBlanc* v. *Browne*, 78 Cal.App.2d 63, 75 [177 P.2d 347].)

While such situations arise infrequently, the applicable rule in an appropriate case is succinctly stated in *Gray* v. *Brinkerhoff, supra*; ''Whether or not defendant was guilty of negligence [citations] is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented [citations].'' This states the law here applicable as we view the record, defendant's own testimony establishing beyond peradventure of doubt that he was guilty of negligence proximately causing plaintiff's injuries; while it is equally apparent that plaintiff was free from contributory negligence.

According to his own testimony, defendant entered his parked automobile, left the door open over the sidewalk, stepped on the starter while the gears were in reverse, without looking to see whether the car was in gear and without disengaging the clutch. This caused defendant's car unexpectedly to lurch backward. His car was thus not under control and created a dangerous hazard to persons who chanced to be in the orbit of its backward movement or on the sidewalk, as was the plaintiff, within the sweep of the open door. Defendant's lack of control of his car and the hazard created by its unexpected backward lurch was admittedly due to his attempt to start the motor without putting the gears in neutral or disengaging the clutch. He gave no attention to the fact that his car was in reverse gear. He testified that he did not look to see whether his car was in gear; he simply ''assumed'' it was not. By his conduct defendant demonstrated a lack of reasonable care in failing to observe the most

elementary precaution imposed on one about to start a parked automobile, viz., the ascertainment of the position of the gears. He thus created an unexpected hazard for anyone within the range of the movements of his uncontrolled vehicle. Actually, defendant impliedly admitted the hazardous situation which he created, for on cross-examination he said that "not realizing I was in reverse, I thought it was perfectly safe to start the car at that time."

*Cook* v. *Sanger*, 110 Cal.App. 90 [293 P. 794], is a case in which the discussion of a comparable situation is worthy of reproduction. There, defendant Sanger returned to his parked car and, without observing that the gear-shift lever was in reverse and the brake released, proceeded to crank the car. This caused the car to back down a hill and knock down plaintiff, who was standing on a sidewalk. The court summarized Sanger's position as follows: " 'I did not notice that the car was in gear; I did not notice that the brake had been released; I did not notice that the car had been moved.' " The court commented (pp. 97-98): "This we think is properly assigned by the respondent not only as a poor excuse, but as no excuse. Sanger, when starting his car by using the crank, was, of course, in a position where he could not have immediate control over the movement of the automobile. The very absence of this power of control would cause any reasonable person to ascertain if his car was in proper condition to be started. Every operator of an automobile knows, and we think must be reasonably held to know, that the starting of a car when in gear, by means of using a crank, is a hazardous operation. If in forward gear, it is likely to run over the person doing the cranking. If in reverse, it would immediately go in the opposite direction and away from the control of the person doing the cranking. The record shows that Sanger did nothing to determine whether the car was in neutral gear or had been changed. Appellant claims that he did not have to do anything to determine whether the car was in neutral gear, whether it had been changed, or whether the brakes were released. This would be tantamount to saying that a person starting a car need not take any precautions whatever to ascertain whether, in so doing, he would either be endangering himself or endangering some other person. Such is not the law. An automobile is a dangerous instrument when not operated with wisdom and due caution, and anyone who fails, whether in the operation of the car after set in motion, or in the setting of a car in motion, without taking reason-

able precautions to see that in so doing injury will not follow, is guilty of acts upon which a jury may find the fact of negligence, even if a court might not declare such acts negligence as a matter of law.''

██ Any doubt as to the legal significance of defendant's conduct is dissipated when it is measured by the duty imposed by section 543 of the Vehicle Code. This section provides: ''No person shall start a vehicle stopped, standing, or parked on a highway nor shall any person back a vehicle on a highway unless and until such movement can be made with reasonable safety.'' Defendant's own testimony demonstrates a violation of this statutory duty for, in his own words, he states that ''not realizing I was in reverse, I thought it was perfectly safe to start the car. . . .'' In this case we have an unqualified admission that defendant started his car without attempting to ascertain whether it was in gear. This, coupled with defendant's implied recognition that the starting of his car while in gear, without the clutch disengaged, and with the open door extending over the sidewalk, would be unsafe, establishes conclusively that defendant's starting of the car under the circumstances was not accomplished with that degree of ''reasonable safety'' contemplated by section 543, Vehicle Code. No other reasonable inference is possible in the light of defendant's failure to show that his violation was justifiable or excusable under the circumstances. (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 588 [177 P.2d 279].) ██ It is well settled that the unexcused or unjustifiable violation of a statute prescribing a standard of conduct for the operator of a motor vehicle is negligence as a matter of law, and if such violation is the proximate cause of injury, liability is properly fastened upon the violator. (*Satterlee* v. *Orange Glenn School Dist.*, *supra*; *LeBlanc* v. *Browne*, 78 Cal.App.2d 63, 72 [177 P.2d 347] ; *Harris* v. *Johnson*, 174 Cal. 55 [161 P. 1155, Ann.Cas. 1918E 560, L.R.A. 1917C 477] ; 19 Cal.Jur. 632, § 65.)

██ We now direct our attention to the conduct of the plaintiff for the purpose of determining whether he was in any way guilty of contributory negligence and whether, therefore, it was proper to give an instruction on that question. We shall first view his situation as revealed by the testimony of the defendant to the effect that he entered his parked car from the curb side, left the door open, that plaintiff was ''right in alongside the door'' but not in the car; that he was ''framed in the door'' but standing on the curb; that it

was the inside of the door that struck plaintiff when the car lurched backward as a result of his attempt to start it while in reverse gear. In this setting, defendant argues that plaintiff must have seen him turn the key and begin to start the car and that since plaintiff was in the process of entering the car, he should have either asked defendant to wait until he could get in, or else have moved away from the door, and that the failure to take either course of action constituted contributory negligence. Even if it be assumed that plaintiff saw defendant turn the key, there is nothing to suggest that he knew the car was in reverse or that defendant would step on the starter before he was in the car and while the door was still open. ■ Furthermore, since defendant's car could not be started in its then condition without violating a duty imposed by section 543 of the Vehicle Code, plaintiff was entitled to assume that he was not exposed to danger for ''The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person.'' (*Harris* v. *Johnson, supra,* p. 58.) There was here no reasonable basis for plaintiff to even suspect that defendant would start his car before plaintiff could get in and while it was in reverse. Hence there is no basis for an inference that plaintiff was contributively negligent under defendant's testimony.

Plaintiff, however, testified that he did not go to defendant's car but that he walked straight to the curb in contemplation of crossing the street; that he observed defendant's car parked at the curb some 10 or 15 feet to his right with the door open; that he did not observe anyone in the car; that while he was still on the sidewalk about 8 or 10 inches from the curb he looked to his left to see whether there was any oncoming traffic, ''and just as I looked to my left, I was struck,'' and knocked down by the open door of defendant's car. Defendant contends that the jury might infer contributory negligence from the above facts on these grounds: (1) that although plaintiff was on the sidewalk he was nevertheless under the duty to ascertain if any person was in the vehicle parked at the curb, and (2) that he should have kept his eye on this parked car whose door was open since ''he could reasonably apprehend danger from that quarter.'' These contentions are patently far-fetched. The law does not require

a person on a sidewalk reasonably to apprehend that a car parked at the curb with its door open would suddenly lurch backward because of the negligence of its driver in attempting to start such car while in reverse gear without disengaging the clutch. Such clairvoyance is not required of one on the sidewalk. The evidence shows that plaintiff looked to his left, which was the direction from which the passing traffic would reasonably constitute a hazard to one in plaintiff's position. However, he was hit from an unexpected and not to be anticipated source as a result of defendant's violation of the duty imposed by section 543, Vehicle Code, which plaintiff had no reason to apprehend. Plaintiff was not negligent in failing to anticipate danger which could only come to him from a violation of a duty imposed by law. (*Harris* v. *Johnson, supra*; *LeBlanc* v. *Browne, supra*; 19 Cal.Jur. p. 632, § 65.) Since there is a complete absence of any showing that plaintiff should have been on guard against possible danger from defendant's vehicle, there is no evidence from which a legitimate inference of negligence on plaintiff's part can be drawn. (*Gray* v. *Brinkerhoff, supra*; *LeBlanc* v. *Browne, supra*.) It was therefore prejudicial error to instruct the jury on contributory negligence. (*Buttrick* v. *Pacific Elec. R. Co.*, 86 Cal.App. 136, 139-140 [260 P. 588] ; *Aurenz* v. *Los Angeles Ry. Corp.*, 19 Cal.App.2d 401, 402-403 [65 P.2d 910].) It is well established that the giving of an instruction which finds no support in the evidence constitutes prejudicial error, where as here, it is calculated to mislead the jury. (*Davenport* v. *Stratton*, 24 Cal.2d 232, 254 [149 P.2d 4].)

The purported appeals from the verdict and the order denying the motion for a new trial are dismissed. The judgment is reversed.

Moore, P. J., concurred.

McComb, J., dissented.

Respondent's petition for a hearing by the Supreme Court was denied May 11, 1955. Carter, J., was of the opinion that the petition should be granted.