[Civ. No. 16908.   First Dist., Div. Two.   Feb. 1, 1957.]

LILA LEE CHRISTENSEN, a Minor, etc., et al., Appellants, v. ROBERT BERGMANN et al., Respondents.

Alexander S. Keenan, Jr., for Appellants.

Ropers & Majeski for Respondents.

COMSTOCK, J. pro tem.*—This is an appeal by plaintiffs from a judgment for defendant entered upon the verdict of a jury and from an order denying plaintiffs' motion for judgment notwithstanding the verdict. Plaintiff Lila Lee Christensen is a 14-year-old minor girl. She sued through her father and guardian ad litem, Frederick O. Christensen, who also sued in his individual capacity. Damages for personal injuries were claimed for the minor; her father sought to recover for expenses paid by him for her care and treatment.

Defendant Robert Bergmann was the servant and employee of defendant Ward Harris Incorporated and was acting within the course and scope of his employment.

The action arose from a collision in which a 1953 Chevrolet Club Coupé, driven by the defendant Bergmann, struck the plaintiff Lila Lee Christensen, who, as a pedestrian, was crossing a highway in an unmarked crosswalk at an intersection.

---

*Assigned by Chairman of Judicial Council.

El Camino Real is a highway running northerly and southerly through Redwood City in San Mateo County. It intersects with Dumbarton Avenue, which enters El Camino Real from the east, and Oakwood Drive, which enters it from the west opposite and in prolongation of Dumbarton Avenue.

Plaintiff Lila Lee Christensen and defendant Robert Bergmann were the principal actors. For convenience they will be referred to, respectively, as plaintiff and defendant.

At the time of the accident, approximately 11 a. m., June 15, 1953, plaintiff and three other girls, one being of the same age as plaintiff and two aged 9 years, were walking westerly on the southerly side of Dumbarton Avenue, intending to cross El Camino Real to look at a swimming pool located westerly of the highway. The crosswalk on the southerly side of the intersection was unmarked. There was a marked crosswalk on the northerly side of the intersection. The girls stopped at the southeast corner of Dumbarton Avenue and El Camino Real to let traffic go by. A high, white-colored, Ford Vanette, walk-in delivery truck traveling northward in the northbound lane of El Camino Real closest to the curb near which the girls stood came to a stop about 8 or 10 feet southerly of the girls. The truck driver motioned the girls across in front of him. Plaintiff and one of the 9-year-old girls started across the street first. They were holding hands, plaintiff on the left and closer to the truck. According to plaintiff's direct testimony, she walked past the truck and had gotten a few feet into the other lane (in which defendant was driving), and did not see defendant's car until the instant it hit her. Cross-examination of the plaintiff developed that she looked to the south before she left her position on the corner and again when she came to the edge of the truck, and, also, just as she passed the edge of the truck; that she could see "down there" but did not see defendant's car.

Plaintiff and her 9-year-old companion were injured, plaintiff receiving a fractured leg and other serious injuries.

The driver of the truck testified that he was proceeding northerly on El Camino Real in the lane next to the curb, just before the accident, at a speed of about 30 or 35 miles per hour. When he was about 150 feet south of the Dumbarton intersection he saw four children at the corner waiting to cross, so he slowed down. He did not remember whether he made any signal. He stopped to let the girls by. They passed in front of his truck, and, as they did so, he observed in his rear-view mirror that defendant's car was approaching

rapidly from his rear in the lane next to his. He yelled a warning but did not know whether the girls heard him. Two of the younger girls jumped back and he "believed" one of the other girls jumped back but was hit a glancing blow and thrown in front of his truck. One girl kept on going and was "hit right straight." He did not hear the other car sound a warning nor hear its brakes being applied but did see skid marks afterwards. He did not see defendant's car turn to the left nor recall that the skid marks showed a turn to the left, but he identified a photograph of the skid marks and admitted that it showed that they did turn a little to the left.

Mrs. Rose Boner witnessed the accident from her automobile which had halted on Oakwood Drive facing east preparatory to turning south on El Camino Real. She saw four children attempting to cross the highway. Two of them were hit. They were looking straight ahead at all times that she observed them. They were not walking slow and were not running. She believed their gait was a rapid walk, hurrying. The truck appeared to her to be turned at an angle to its right. She estimated the speed of the car which hit the children as medium, between 30 and 45 miles per hour.

There was no conflict in the testimony that at all pertinent times the truck was in the easterly northbound lane, designated by witnesses as lane number one, and defendant in the next adjoining northbound lane, designated as lane number two.

Defendant Robert Bergmann was driving north on El Camino Real in lane number two. The weather was good, the sun was shining and the highway was dry. The traffic was light in front of him. There were no vehicles ahead of him in the same lane. He first noticed the truck when he was about four or five blocks from Dumbarton Avenue. It was proceeding in lane number one about 50 or 60 feet ahead of him. Their speed was approximately the same, 30 to 35 miles an hour. When the truck was approximately 100 to 150 feet from Dumbarton Avenue it began to slow down gradually. He took his foot off the accelerator but gained on the truck. He could see straight ahead and to his left and looked toward the front of the truck but it obscured his view to its front and beyond it. He was familiar with the locality and could see the intersection except the portion obscured by the truck. He thought the truck was going to turn right. When it stopped it was turned at an angle to the right. At the moment the truck stopped, defendant's car was about 10 feet

from its left rear end. At this same moment he could see for the first time the girls' heads; "they just started to come out." As soon as he saw them "poke their heads out" he "slammed" or "jammed" on his brakes and swerved to the left. The two girls ran out in front of him from in front of the truck when he first saw them. His main concern was to stop the car somehow or other, to get out of the way, so that it would not hit them. His car struck the two girls. He had not seen the girls standing at the corner of the intersection nor until their heads appeared coming past the front of the truck.

Plaintiff was familiar with the highway and the intersection and knew that there was a marked crosswalk on the north side and an unmarked crosswalk on the side where she was crossing. She said she knew that beside the truck there might well be other vehicles using the roadway there at the same time.

Plaintiff challenges the judgment and order upon three grounds:

1. That the record is barren of any evidence to support the verdict and judgment.

2. That the trial court committed prejudicial error in instructing the jury, at the request of respondents, on the doctrine of "imminent peril."

3. That the record shows that respondents were negligent and appellants free of contributory negligence as a matter of law.

We have concluded that none of plaintiff's contentions can be sustained. The case was a proper one to submit to the jury and the verdict has substantial support in the evidence. The instruction was an accurate statement of the law and was appropriate to be considered by the jury in relation to both the issue of negligence and the issue of contributory negligence.

█ It is true, as argued by plaintiff and conceded by defendant, that a violation of either subsection (a) or (b) of section 560 of the Vehicle Code would constitute negligence as a matter of law in the absence of reasonable explanation for such conduct. (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]; *Ornales* v. *Wigger*, 35 Cal.2d 474 [218 P.2d 531]; *Gray* v. *Brinckerhoff*, 41 Cal.2d 180 [258 P.2d 834].)

Section 560 of the Vehicle Code reads as follows:

"560. *Pedestrians' Right of Way at Crosswalks.* (a) The

driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter.

"(b) Whenever any vehicle has stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle."

In this case, the defendant offered an explanation which the trial judge thought presented an issue of fact for the jury. At plaintiff's request, the court read to the jury the provisions of section 560 of the Vehicle Code (Instruction No. 10 requested by plaintiff), and also instructed them that "A violation of law is of no consequence in this action unless it was the proximate cause of the injuries found by you to have been suffered by the plaintiff." (Instruction No. 13 requested by plaintiff.)

In *Driver* v. *Norman*, 106 Cal.App.2d 725 [236 P.2d 6], the court rejected plaintiff's contention that defendant was negligent as a matter of law and held that although a violation of section 560 of the Vehicle Code *could* constitute such negligence, it was for the jury to decide under the facts of that case whether the defendant's failure to yield the right of way to the plaintiff amounted to negligence. At page 728, the court stated: "Under all the circumstances the, jury could properly have determined that appellant was not negligent in failing to yield the right of way since his vision was obscured by the Cadillac which preceded him. For the same reason his failure to see respondent might be excused since she appeared suddenly from in front of the other vehicle. At the least, the evidence is not such that the court is impelled to say reasonable men could and must draw only the inference of negligence. Under such circumstances violation of a statute is not negligence *per se* proximately contributing to the accident. The facts in that case were quite similar to the facts in this.

*Ornales* v. *Wigger*, 35 Cal.2d 474 [218 P.2d 531], was a case where the defendant driver of a vehicle failed to yield the right of way to a pedestrian crossing the roadway within a marked crosswalk. It was a dark, rainy night. Plaintiff claimed she had looked in both directions before crossing the street. She was dressed in black and carrying an umbrella. She said she looked again just after she crossed the center line.

She had taken two or three additional steps when she was struck by or walked into an automobile driven by the defendant. The defendant testified that she did not see the plaintiff prior to the accident, and that all she had seen was a black parasol going by the left-hand window of the car. The case was tried before a jury. Plaintiff's motion for a directed verdict was denied. The jury returned a verdict for defendant and plaintiff then made a motion for judgment notwithstanding the verdict and for a new trial, both of which were denied. The court fully discussed the Satterlee case and other authorities dealing with the question of what facts will excuse the violation of a statute. It recognized the rule that the fact which will excuse the violation of a statute is one resulting "from causes or things beyond the control of the person charged with the violation." Quoting from the Satterlee case, the court said, "In the application of this rule each violation of a statutory requirement must be considered in connection with the surrounding circumstances. Ordinarily, the excuse relied upon by the violator presents a question of fact for the jury's determination." It was held that the case was a proper one for the jury.

In our case, defendant saw no pedestrian in the crosswalk in front of him; his view of the crosswalk and other space in front of and beyond the truck was obscured; the truck stopped at an angle to its right and he thought it was going to turn easterly into Dumbarton Avenue; he saw the girls' heads for the first time as they came past the front of the truck; he said they ran out in front of him; he applied his brakes and swerved to his left immediately as he saw the truck stop and noticed the girls' heads "stick out" or come past the truck and when he was about 10 feet from its left rear end. This was his explanation of his conduct. We think the trial court was right in submitting the case to the jury for its determination. Indeed, it appears that it would have been error to take the question from the jury. (*Bishop* v. *Reid*, 120 Cal.App.2d 391 [261 P.2d 303].)

Cases relied upon by plaintiff in support of her argument that defendant's explanation of his conduct did not afford a sufficient excuse to overcome the presumption of negligence arising from a prima facie case of violation of a statute are clearly distinguishable upon the facts. *People* v. *Lett*, 77 Cal.App.2d 917 [177 P.2d 47], was a manslaughter case. As the defendant approached a crosswalk in which decedent was walking, his eyes were blinded by the lights of another

car. Notwithstanding he was blinded he took no precaution except to "let up on the gas—the accelerator." It was held that he had no right to assume the road was clear and that the fact that he did not know that decedent was in the crosswalk was no excuse for his failure to give warning or for not keeping a proper lookout for pedestrians. He was held guilty of negligence as a matter of law in failing to yield the right of way to decedent, in failing to sound his horn and in driving at a speed greater than was reasonable or prudent under all the circumstances. His admission that the lights of the opposing car blinded him for a distance of 50 or 75 feet before he struck decedent, that he did nothing to slow his car, except to "let up on the accelerator," and that he traveled 75 feet after he struck decedent before he stopped was held to fix his responsibility. The court said that the case might be different if the blinding lights had flashed suddenly, allowing insufficient time for defendant to check his speed. *Fischer* v. *Keen*, 43 Cal.App.2d 244 [110 P.2d 693], was a case in which the court held a driver of an automobile which struck plaintiff in an unmarked crosswalk to be guilty of negligence *per se* but sustained a judgment for the defendant upon the ground that it was a proper case for the jury on the issue of plaintiff's contributory negligence. Defendant relied for his excuse in violating section 560, subsection (a), of the Vehicle Code upon the facts that the misty condition of his windshield prevented him from seeing to his left and that he was blinded by the headlights of approaching automobiles. He had not removed his foot from the accelerator or applied his brakes at any time prior to the accident. The court held that when he found he could not see to his left and thereby ascertain whether anyone was within the crosswalk, it was his duty to slacken his admitted speed of 25 miles per hour and place his car under such control that he could stop within the time and distance intervening between his ability to see the crosswalk and his arrival thereat. *Pierce* v. *Black*, 131 Cal.App.2d 521 [280 P.2d 913], is totally unlike the case before us. It was one in which defendant was held guilty of negligence as a matter of law, and plaintiff free from contributory negligence as a matter of law, where defendant entered his automobile and started the motor while his door next to the curb was open and the car was in reverse gear, causing it to start suddenly backward, striking and injuring plaintiff who had walked up to the curb and had just looked to his left to see if there was

any traffic coming preparatory to crossing the street. Defendant's car had been standing at the curb, 10 or 15 feet to plaintiff's right, facing away from him, and he had not seen the operator in the vehicle. It was held that defendant's own testimony established beyond peradventure of doubt that he was guilty of negligence proximately causing plaintiff's injuries and that it was equally apparent that plaintiff was free from contributory negligence.

Plaintiff's argument that, as a matter of law, she was free from contributory negligence, ignores settled principles that one about to cross a highway on which motor vehicle traffic is to be expected must make reasonable observations to learn the traffic conditions confronting him; look to the vicinity from which, were a vehicle approaching, it would immediately endanger his passage; try to make a sensible decision whether it is reasonably safe to attempt the crossing, and generally exercise ordinary care, including reasonable use of his senses, to avoid an accident. The evidence posed questions of whether plaintiff ran out or walked rapidly from an obscured position in front of the truck into defendant's path without looking in any direction except forward; whether she should have heard the truck driver yell and should have jumped back as at least two of the other girls did; whether she looked at or in the direction from which defendant's car was approaching; whether she made reasonably careful use of her eyesight to see defendant; whether defendant was plainly to be seen, and whether she saw defendant but carelessly moved into his path. It is difficult to see how the trial court could properly have done otherwise than deny the motion for a directed verdict and submit the case to the jury as a factual problem. It was certainly well within the law in so doing. (*Sanker* v. *Humborg*, 48 Cal.App.2d 203 [119 P.2d 431]; *Salomon* v. *Meyer*, 1 Cal.2d 11 [32 P.2d 631]; *McQuigg* v. *Childs*, 213 Cal. 661 [3 P.2d 309]; *Hudson* v. *Rainville*, 46 Cal.2d 474 [297 P.2d 434]; *Francis* v. *City & County of San Francisco*, 44 Cal.2d 335 [282 P.2d 496]; *Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 P. 125]; *Lavin* v. *Fereira*, 10 Cal.App.2d 710 [52 P.2d 518]; *Reed* v. *Stroh*, 54 Cal.App.2d 183 [128 P.2d 829].) The cases of *LeBlanc* v. *Brown*, 78 Cal.App.2d 63 [177 P.2d 347], and *Pierce* v. *Black*, 131 Cal.App.2d 521 [280 P.2d 913], do not support plaintiff's position under the facts.

The instruction on imminent peril given by the trial court

at defendant's request was as follows: "A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected, nor required, to use the same judgment and prudence that is required of him, in the exercise of ordinary care, in calmer and more deliberate moments. His duty is to exercise only that care that an ordinarily prudent person would exercise in the same situation. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by an ordinarily prudent person under the same conditions, he does all the law requires of him, although, in the light of after-events, it should appear that a different course would have been better and safer." The contention that it was prejudicial error to give it in this case is largely predicated upon the assumption that defendant was negligent as a matter of law and plaintiff free from contributory negligence as a matter of law, of which we have previously disposed. However, the argument proceeds upon the premise that before an instruction on imminent peril is proper, two elements are necessary: (1) At least two courses of action are present after the danger is perceived; (2) No negligence is chargeable to the person to whom those courses of action are open. Defendant does not dispute the accuracy of the law as stated in cases cited by plaintiff in support of this proposition. ■ Plaintiff says that neither element is present in this case; that defendant had no choice of action; that the giving of the instruction may have misled and confused the jury and was therefore prejudicial. We disagree with this assertion. As above stated, it was a question of fact for the jury to decide whether or not negligence was chargeable to the defendant. We are of the opinion that he had open to him a choice of several courses of action when the truck stopped about 10 feet ahead of him and he saw the heads of the girls appear, and that this situation was an emergency not of his making. He could have sounded his horn, or swerved sharply to the left, or to the right, or relied upon his brakes alone, or done a combination of these things to avoid the collision or lessen the probability of striking the plaintiff. Whether he was negligent in not selecting the best or safest of these courses in the face of the emergency was for the jury to decide. Plaintiff agrees that the instruction was a correct statement of the law and that

she herself could have asked for it, but argues that as given it could only have applied to the defendant; that it uses the masculine pronoun throughout while plaintiff is a very feminine young girl. There is no merit in this contention. The instruction was a broad, general statement of principle applying to a standard of conduct or duty of "a person" confronted by a sudden emergency not caused by his own negligence. ■ It was grammatically correct to use the masculine pronoun after identifying the subject as "a person." Thus, elementary rules teach us that the masculine pronouns ("he," "his," "him") are used to refer to nouns of indefinite gender, as "everyone," "a person," etc. It will not be assumed that the jury were lacking in a fundamental knowledge of English and would be misled. As a correct statement of the law, this instruction could properly have been given by the court on its own motion to aid the jury in judging the conduct of plaintiff or defendant and analyzing how each performed his duty of ordinary care under all the surrounding circumstances. It was beneficial to either, depending upon how the jury viewed the facts.

Since we take this view of the challenged instruction, it is unnecessary for us to discuss in detail the arguments on both sides as to whether or not there was a waiver of the objection to it by plaintiff for failure to ask for a clarification or by inviting any possible error by herself requesting the instruction which the trial judge gave, immediately following the questioned one, to the effect that "a person who, himself, is exercising ordinary care has a right to assume that others too will perform their duty under the law. . . ."

The judgment and order appealed from are affirmed.

Dooling, Acting P. J., and Kaufman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 27, 1957. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.