**MRS. BAIRD'S BAKERIES, INC., Appellant,**

v.

**Bobby Lewis ROBERTS et al., Appellees.**

**No. 3684.**

Court of Civil Appeals of Texas.

Eastland.

Sept. 21, 1962.

Rehearing Denied Oct. 12, 1962.

McMahon, Smart, Sprain, Wilson & Camp, Abilene, for appellant.

Scarborough, Black & Tarpley, Abilene, L. H. Welch, Breckenridge, for appellee.

GRISSOM, Chief Justice.

On September 5, 1959, at about 1:00 o'clock in the afternoon, Bobby Lewis Roberts, age thirteen, was riding his father's motorcycle east on Highway 180 and Walker Street in the City of Breckenridge. Mr. Pennington, an employee of Mrs. Baird's Bakeries, Inc., had parked said company's bakery truck and trailer, about 45 feet in length, in front of the company's warehouse on the south side of Walker Street. This was Pennington's last bread delivery for the day and he was in a hurry to return to Abilene. The truck was facing east. About 60 feet to the west there was a street intersection and a block east of that intersection there was another. Pennington saw Bobby riding the motorcycle east when Bobby was six or seven hundred feet west of the parked truck. Thereupon, Pennington drove the truck to his left, in the middle of the block, north and slightly west across said street and highway and across two solid yellow lines 4 feet apart at the center

of the highway. While Pennington was in this position, with the truck turning toward the west on the north side of the highway and the trailer occupying all but about ten feet of the south side of the highway, Bobby drove the motorcycle out of a lower portion of said highway to the west and ran into the trailer. The motorcycle was demolished and Bobby suffered severe injuries. Bobby and his father sued Mrs. Baird's Bakeries, Inc., for damages.

Pennington testified, in effect, that he saw Bobby when he was six or seven hundred feet to the west as Pennington started turning across the highway; that he did not see Bobby again until Bobby was two hundred feet away and approaching the truck at 60 miles per hour and that there was nothing he could then do to avoid the collision. The paved portion of the highway is one hundred feet wide. At the place of the collision and for about two miles through the city the highway was marked with two solid yellow stripes painted on the highway four feet apart at its center with the lines unbroken except at street intersections. There was no material dispute about what Pennington did. Plaintiffs' testimony was to the effect that Bobby was approaching the truck at about thirty miles per hour while defendant's testimony is that he was driving about sixty miles per hour.

A jury found that (1) Pennington attempted to turn the truck to his left across the yellow stripes on the highway; that (2) Pennington's failure to turn at an opening or dividing section, instead of across the yellow stripes, was negligence (3) and a proximate cause of the collision; that (4) Pennington failed to keep a proper lookout, (5) which was a proximate cause of the collision; that (6) Pennington attempted to turn left without giving a signal of his intention to do so and that (7) this was negligence and (8) a proximate cause of the collision; that (9) prior to the collision Bobby was in a perilous position; that (10) before Pennington commenced turning left he saw Bobby approaching on his motorcycle; that (11) Pennington knew, or should have known, of Bobby's perilous position before he commenced turning left; that, (12) having due regard for his own safety and the safety of the truck, Pennington could have avoided the collision by the exercise of ordinary care; that (13) Pennington failed to exercise ordinary care to use the means at hand to avoid the collision and that (14) such failure was a proximate cause of Bobby's injury; that (15) the collision was not the result of an unavoidable accident; that (16) $5,000.00 would compensate Bobby's father for the damages suffered by him; that (17) $40,000.00 would compensate Bobby for his injuries; that (18) Bobby was not driving the motorcycle at an excessive rate of speed; that (21) Bobby did not fail to keep a proper lookout; that (23) immediately prior to the collision Bobby turned to his left but that (24) this was not negligence; that (26) Bobby did not drive across the center line of the highway; that (29) Bobby was not operating the motorcycle with the consent of his parents; that (35) Bobby's father and mother failed to equip the motorcycle with a device to prevent him from taking it without their consent but that (36) such failure was not negligence. The court rendered judgment in accord with the verdict and the defendant has appealed.

The defendant alleged that Pennington was not making a U-turn, but was driving across the highway for the purpose of making a left-hand turn; that where the accident occurred the blocks along the highway are very long and that it was customary for the defendant and other drivers whose businesses were located on both sides of the highway, or their patrons, to drive across the highway for the purpose of making a left turn. Plaintiff excepted to the allegations of custom because, if true, they did not constitute a legal justification for a violation of the law. The defendant asked the court to instruct the jury that in determining whether Pennington was guilty of negligence it could consider such custom. It offered evidence of custom. The

court struck said pleading, refused to permit the introduction of proffered evidence relative to custom and refused to submit the tendered instruction. Appellant's points 1 and 3 complain of the striking of said pleading and the refusal to submit said instruction. Point 2 complains of the refusal to permit the Chief of Police to testify that it was customary for motorists patronizing business establishments on both sides of the street to cross the yellow stripes when turning either left or right, without going to an intersection, and further that it was not considered by the police to be a violation of the law and no tickets were given therefor. Appellees answer the contention that said rulings constitute reversible error by saying thtat there was no allegation that the custom was known by Bobby or Pennington and because appellant proved that the yellow stripes in the center of the highway continued for several miles through Breckenridge and were broken only at intersections and that any one making a U-turn in the middle of a block was violating the law. Appellees also contend that Pennington's act in turning left in the middle of the block and driving across the solid yellow lines in the center of said street and highway was a violation of the statutes and, therefore, that the proffered testimony was not admissible because evidence of a custom which is in violation of a statute is not admissible. The general rule is to that effect. 172 A.L.R. 1142; 25 C.J.S. Customs and Usages § 10, p. 91; Wood v. Melton, 179 Kan. 128, 293 P.2d 252; Robinson v. Wichita County, Tex.Civ.App., 106 S.W.2d 769, 772, (Writ Dis.); Peaslee-Gaulbert Corporation v. Hughes, Tex.Civ.App., 79 S.W.2d 149, (Writ Ref.). Points 1, 2 and 3 are overruled.

Article 6701d, Section 62, Vernon's Ann. R.C.S. provides:

"Whenever any highway has been divided into two (2) roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway and no vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening in such physical barrier or dividing section or space or at a crossover or intersection established by public authority."

No cases are cited which hold that the space enclosed by the two solid yellow lines in the center of said street and highway constitutes an intervening space or dividing section within the meaning of said statute and we have found none. We think it does. See Coleman v. Manuel, Tex.Civ. App., 244 S.W.2d 256, 257, (Ref. N.R.E.); Jessee Produce Company v. Ewing, Tex. Civ.App., 213 S.W.2d 750; Wood v. Melton, 179 Kan. 128, 293 P.2d 252, 255.

We overrule appellant's point 4 in which it contends the court erred in refusing to admit testimony with reference to Bobby's reckless conduct with the motorcycle on occasions wholly disconnected from the one in question. Glass v. Houston Singing Soc., Tex.Civ.App., 192 S.W.2d 300; Mayton v. Sonnefield, Tex.Civ.App., 48 S.W. 608; Chuppe v. Gulf Iron Works, Tex.Civ.App., 306 S.W.2d 177.

Appellant's points 5, 6 and 7 are that the court erred in overruling its objections to issues 1, 2 and 3. Appellant objected to issue 1 because it was immaterial and inquired about an undisputed fact, there being no dispute about the fact that Pennington drove the truck across the yellow stripes; because the submission of such undisputed issue was made "solely for the purpose of prejudicing the jury" against appellant, in that, the jury would have to answer issue 1, "Yes", and "they will answer all subsequent issues against the defendant." It objected to said issue because it was a comment on the weight of the evidence and amounted to an instruction that driving across the yellow stripes was a violation of the law. We agree with appellant that issue 1 submitted an undisputed

fact. It was undisputed that Pennington drove across the yellow stripes. When this case was tried there was no decision applying facts similar to the material facts in this case to Article 6701d, Section 62. Further, the court had to determine whether said statute was designed to prevent such an occurrence. We think it was. Issue 1 should not have been submitted but we do not think that its submission was harmful to appellant. Appellant says that such submission constituted a comment on the weight of the evidence and amounted to an instruction that Pennington violated the statute in driving across the yellow stripes. Under our interpretation of said statute, there being no evidence excusing such violation, Pennington was guilty of negligence per se. Mundy v. Pirie-Slaughter Motor Company, 146 Tex. 314, 206 S.W.2d 587, 588. We do not think the effect of the submission of issue 1 was to cause the jury to answer other issues in favor of the plaintiff or that it was a comment on the weight of the evidence. Appellant's remaining objections to the submission of said issues are substantially answered by our interpretation of said statute. We do not think that such submission was reasonably calculated to cause or that it probably did cause the rendition of an improper verdict. We have considered appellant's authorities and, where otherwise applicable, have concluded that they may be distinguished by a difference in the facts.

■■■■ Appellant says the judgment should be reversed because the court refused to submit its requested issues inquiring whether at the time the truck driver saw Bobby the second time he was acting in an emergency and whether after the emergency arose its driver did what an ordinary prudent person would have done. We recognize the established rule that such a person as the truck driver who by the negligence of another, such as Bobby, and not by his own negligence, is suddenly confronted by an emergency and compelled to act instantly to avoid a collision is not guilty of negligence if he makes such a choice of

alternative courses of action available to him as a person of ordinary prudence placed in such a position might make, although he did not make the wisest choice. However, we think the issue of sudden emergency at the time inquired about was not raised. Where the issue of sudden emergency is raised, the jury in determining the propriety of the actor's conduct may take into account the fact that he was in a position where he must make a speedy decision "between alternative courses of action" available to him and that, therefore, he has no time to make an accurate forecast of the effect of his choice. Restatement of the Law of Torts, Section 296, page 796; 80 A.L.R.2d 16, 17; Frangos v. Edmunds, 179 Or. 577, 173 P.2d 596, 609; Christensen v. Bergmann, 148 Cal.App.2d 176, 306 P.2d 561, 567; Connor v. Pacific Greyhound Lines, 104 A.C.A. 930, 232 P.2d 500, 506; Johnson v. Barnes, 55 Wash.2d 785, 350 P.2d 471, 474. There was no contention that appellant's truck driver, at the time he says he saw Bobby 200 feet away travelling at a speed that would cause him to strike appellant's truck in less than three seconds, saw Bobby in time to prevent the collision by making a choice of alternative courses of action available to him, either of which might have avoided the collision. Under such circumstances he could only have tried to do one of two things, stop or continue moving. Neither could have avoided the collision. The real issue as to the truck driver's responsibility is determined by reference to his action which brought about the dangerous situation when, in violation of a statute intended to prevent such a happening, seeing Bobby driving a motorcycle in his direction six or seven hundred feet to the west, he turned his truck to the left in the middle of the block across the yellow stripes and blocked much of the highway. His responsibility is not to be determined by what he did when he saw Bobby emerging from a low place in the highway, as he says, two hundred feet away and travelling sixty miles per hour. The truck driver testified that when he saw Bobby the second time that he

could then have done nothing which would have prevented the collision. No one contends to the contrary. No one contends that if he could then have stopped, with less than three seconds intervening, that he could have avoided the collision. He then had no choice of alternative courses of action that might have avoided the collision. In addition, the alleged sudden emergency, if any, was created by his own tortious act in illegally turning across the highway and yellow stripes in the center of the block in violation of the statute knowing that Bobby was six to seven hundred feet west driving a motorcycle toward him. There are other reasons why failure to submit defendants requested issues on emergency do not constitute reversible error. In Stephens v. McCarter, Tex.Civ.App., 355 S.W.2d 93, 95, a jury found that defendant failed to timely apply his brakes and failed to keep a proper lookout. But, it also found that immediately prior to the collision the defendant was acting in an emergency and that after the emergency the defendant did all that a prudent person would have done to avoid the collision. The defendant contended that the findings that defendant was negligent in failing to timely apply his brakes and in failing to keep a proper lookout were in conflict with the findings on emergency. The court said "Where the jury has found defendant guilty of negligence proximately causing a collision, a finding of emergency is not in conflict with the findings of primary negligence, and absent findings that the emergency constituted the sole proximate cause of the collision, the specific findings of negligence override the general emergency finding, and the emergency issue will be disregarded in rendering judgment." The decisions in Booker v. Baker, Tex.Civ.App., 306 S.W.2d 767 (Ref. N.R.E.) and City Transportation Co. of Dallas v. Vatsures, Tex.Civ.App., 278 S.W.2d 373, (Writ Dis.) are to the same effect. If the court had submitted said issues and the jury had answered same in favor of the defendant it would not have affected the judgment.

We have considered all of appellant's points and have concluded that reversible error is not shown. The judgment is affirmed.