[Civ. No. 18522.   Second Dist., Div. One.   Jan. 2, 1952.]

BEN PERCIN et al., Appellants, v. LOUIS L. EASLEY, Respondent.

Flaum & Hecker and Eugene L. Wyman for Appellants.

DeForrest Home for Respondent.

DRAPEAU, J.—This action arose out of a collision between two automobiles being operated by plaintiff Ben Percin and the defendant.   It occurred at about 1:20 a. m. on November 28, 1949, as both cars were traveling southerly on Cahuenga Freeway in Cahuenga Pass near the Highland Avenue cutoff.

Cahuenga Freeway merges from a three- to a four-lane highway about a mile north of the place of the collision.   These lanes are herein referred to as numbers one, two, three and

four from east to west respectively. At the cutoff Cahuenga Boulevard and Highland Avenue separate into two two-lane highways running generally north and south, Cahuenga lying to the east of the dividing fork in lanes one and two, and Highland to the west of the fork in lanes three and four.

Approaching the cutoff there is a group of painted arrows on the highway pointing first one way and then the other dividing said four lanes in the middle, two for Cahuenga and two for Highland. These arrows extend for several hundred feet to a row of metal buttons which continue for about 250 feet to a concrete curb extending for about 150 feet which completes the separation of the two highways.

At the time of the accident the visibility was good and traffic was light.

The jury returned a verdict in favor of defendant; plaintiffs' motion for new trial was denied, and they here appeal from the judgment entered pursuant to the verdict.

Appellants' main point on appeal is insufficiency of the evidence to support the judgment.

Appellant Ben Percin testified that, accompanied by his wife and the latter's uncle, Morris Rosen, he was driving from Studio City to his home in Los Angeles; that when he reached Cahuenga Pass, he was traveling south at about 35 miles per hour; that for about a mile north of the point where the highway divides, he was in lane two to wit: the right-hand lane of Cahuenga next to the markers and the buttons; that he remained in that lane continuously until his car was struck in the rear, suddenly and without warning. He fixed the point of impact as several hundred feet "past the beginning of the markers."

Mr. Percin admitted that he made a report of the accident to his insurance company, in which he made the following statements:

"As we approached the point where the Freeway forks, Cahuenga left and Highland right, I was on the right hand side or south side of the highway which is all one way east bound, and about twenty feet out or north of the curb on my right. . . . Just before I came to where there are dividing arrows painted on the center of the highway to show that Cahuenga and Highland divide, I pulled over to my left and into the nearest or most southerly east bound lane on Cahuenga. As I pulled over into the left side of the highway, there was no other traffic around me that I could see. I did, however, give a left hand signal out my left window from

force of habit. When I had completed turning over to the Cahuenga side and going east in a straight line for about a hundred yards, my car was suddenly struck from the left.''

While the directions referred to in the statement appear to be inconsistent with the testimony produced at the trial, it was explained by the trial judge that ''I think at that point it is more east than south. Highland, after you get into it, runs north and south, but it comes into the Pass there almost at right angles.''

Respondent Easley testified that he entered Cahuenga Pass at Vineland and continued southerly at 35 or 40 miles per hour; that there are three lanes on Cahuenga at this point; that he was traveling in the left-hand lane toward Hollywood, to wit: in lane one, and increased his speed to 50 miles per hour; that visibility was from 100 to 200 feet, and through his rearview mirror he saw traffic following him at a distance of about 300 feet. He was familiar with the highway, traveling it every day; that from Barham Boulevard the three lanes divide into four, and approaching the cutoff of Highland Avenue and Cahuenga Boulevard ''there is a group of arrows pointing first one way and then the other· dividing the four lanes in the middle.'' Mr. Easley further testified that he continued south in lane one until immediately prior to the collision; that for about 300 feet north of the separation of the highway, his lights were on low beam so ''that actually nothing came within a range of my lights for more than two hundred feet,'' but ''I believe I could have seen an automobile'' beyond the two hundred feet because of the lighting conditions in the area. Also, that as he came up to the painted arrows on the highway dividing Cahuenga and Highland, he noticed the headlights of a car to his right; that he was then in lane one (the inside lane) and about opposite the point where the highway began to separate; that he continued for 200 or 300 feet to the point of the accident. He first saw appellants' car when it was about 100 feet ahead; that it was in front of him but not directly ahead; it was between lanes two and three traveling toward lane one; that it was not going very fast but was moving in the direction of lane one. Respondent immediately applied his brakes and swerved his car in an effort to miss appellants' car. His car skidded approximately 20 feet head on and 30 feet sidewise, the front pointing toward lane two. He was going about 50 miles per hour when he applied his brakes, and was then between 75 and 100 feet back of appellants' car. The roadway was downhill

and his car was rolling; his foot was on the brake pedal and not on the accelerator. As soon as he saw appellants' car he applied his brakes, but the left side of his car skidded sidewise into the rear of appellants' car. Respondent estimated that his speed at the moment of impact was 20 miles per hour, and that the speed of appellants' car was 10 to 15 miles an hour.

According to respondent's version of the accident, when he first saw appellants' car it was crossing from lane three (Highland Avenue side) across the separating markers into lane two (the Cahuenga side), and that it continued toward lane one in which respondent was then driving.

The map of the scene which was used at the trial shows that the point of impact was well south of the place where the dividing markers commenced. Officer Bornish fixed it at 552 feet south of the start of the markers, in lane one, 10 feet west of the east curb of Cahunega. He also measured respondent's skid marks and found them to be 30 feet in length.

Respondent's testimony tended to establish that he was traveling at a lawful rate of speed in lane one, i.e., the inside lane on Cahuenga, until suddenly confronted by an automobile coming from the right across the separating strip of the highway directly into his path; that he immediately applied his brakes, resulting in a 30-foot skid, and collided with the rear of appellants' car at a point within respondent's lane of travel. This version is directly corroborated by appellant Ben Percin's statement, hereinbefore referred to, that "I pulled over to my left and into the nearest or most southerly eastbound lane on Cahunega" and gave a left-hand signal from force of habit.

It is argued by appellants that respondent was negligent in traveling 50 miles per hour in an intoxicated condition. Evidence was presented that respondent had been drinking prior to the accident and that he pleaded guilty to a charge of driving while intoxicated. ██ However, it was for the jury to determine therefrom whether respondent's intoxication was a factor which contributed to the collision. (*Drury* v. *Hagerstrom*, 68 Cal.App.2d 742, 745 [157 P.2d 878].) The jury impliedly found that respondent was free from negligence and that appellant Ben Percin was contributively negligent when he crossed over the dividing line into the path of respondent's automobile.

The evidence produced by respondent and corroborated by appellant Ben Percin was sufficient to sustain the verdict and the judgment based thereon. Under the substantial-evidence rule "An appellate court has no power to disturb a judgment when the conclusion reached by the jury is supported by substantial evidence, contradicted or uncontradicted, or by reasonable inferences from that evidence. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P. 2d 183]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) This rule applies with equal force to verdicts in favor of a defendant as well as to those in favor of a plaintiff." *Rivera* v. *Goodenough*, 71 Cal.App.2d 223, 230 [162 P.2d 498].

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.