[Civ. No. 21461. Second Dist., Div. Two. Apr. 2, 1956.]

M. LOUISE CASPER, Appellant, v. CITY OF LOS
ANGELES et al., Respondents.

Philip Mirecki for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Joseph N. Owen, Deputy City Attorney, for Respondents.

MOORE, P. J.—Appeal from a judgment denying relief for injuries assertedly sustained by appellant when she allegedly fell on a defective sidewalk of respondent city and suffered injuries.

On July 18, 1953, about 9 p. m. while walking, "practically like walking a chalk line" on the right hand edge of Lyman Place, appellant stepped her left foot into what she thought was a hole, fell and suffered broken bones in the same pedal extremity. She now demands a reversal of the judgment entered on the verdict on the grounds that (1) the sidewalk at the place of her fall was in a defective condition; (2) the city had knowledge thereof; (3) for a reasonable time after

acquiring such knowledge it failed to remedy the dangerous condition or take action reasonably necessary to protect the public against such condition. The statutes under which the action was alleged appear on the margin hereof.* She contends that the evidence clearly established that the broken edge of the sidewalk was raised 2½ inches for a distance of about 6 feet; that she was not familiar with the street and knew nothing of the impairment of the sidewalk and therefore she should be reimbursed for her expenditures made necessary by her fall and should recover compensation for her pain and suffering and for time lost from her employment by reason thereof.

Appellant is reminded that she had a trial in the forum of her choice. She presented all her evidence to a jury which heard and considered not only hers but also that presented by respondent, and decided that she was not entitled to prevail. The results of such a trial are final where no prejudicial error appears, where there is substantial evidence supporting the verdict, and especially where the trial court has reviewed the record on a motion for new trial and rejected such motion. We cannot overemphasize the important position of the trial court in the judicial system. Its function is to hear and determine controversies of the gravest concern. Its judgments are made upon the hypothesis that all issues of a controversy were raised by the pleadings, were by the judgment settled and that when based upon substantial evidence, it is final.

Despite the universal acceptance of the truth of the foregoing observations, appellant comes now urging here the very evidence she produced in the trial court, makes the same argument she made there and insists that a different judgment should be ordered. She says that ''the conclusion is inescapable,

---

*Government Code, section 53050.

(a) ''Person'' or ''public'' includes a pupil attending the public schools of any school or high school district.

(b) ''Public property'' means public street, highway, building, park, grounds, works, or property.

(c) ''Local agency'' means city, county, or school district.

Government Code, section 53051.

A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition:

(a) Had knowledge or notice of the defective or dangerous condition.

(b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.

from the uncontradicted evidence introduced at the trial that the city of Los Angeles is liable for maintaining its sidewalks in a dangerous and defective condition for an accident occurring through ordinary, usual and customary use of such street, when the city, managing board, officer or person in charge had knowledge of such defective condition and . . . failed to take such action as may be reasonably necessary to protect the public . . .''

It appears that she was walking south on the east side of Lyman Place, on the right-hand edge of the sidewalk, putting one foot ''directly in front of the other . . . and I had just come out of a driveway, so it would be between the driveway and the alley. . . . The second step I took is the step that broke the foot.'' [44 inches from the driveway.] By such testimony, the jury could reasonably have found that she could not have been within a foot of the claimed defect [60 inches from the driveway] when she fell and therefore could not have stepped into the ''hole'' at her second step beyond the driveway.

The jury could have found that she was not wholly free from contributory negligence. As she was walking south, she did not ''concentrate on the fact, but there was something about the place that made me go on the outer edge of the walk . . . there was a feeling that I should stay away from that inner edge as I walked, so I walked to the extreme right edge of the sidewalk . . . I walked down in the driveway and up out of it . . . I was specially looking at the alley.'' She had not been particularly looking at the sidewalk and could not remember the last time she had looked at it prior to the fall, but did not look at it after she came out of the driveway. ''It was fairly light; it wasn't a real dark street.''

Thus appellant evidently impressed the jury that if she relied upon her faculties in negotiating the sidewalk, her chief reliance was upon her hunches and her ''feeling'' in selecting a safe course to pursue and did not intelligently and carefully select a way that might lead her safely to her destination.

The question of fact presented to the jury, to wit, whether there was a dangerous condition on the sidewalk, whether it was the proximate cause of appellant's injury, whether she contributed any negligence to cause herself to fall, were addressed to the triers of fact, the jury, functioning under the supervision of the trial judge. Inasmuch as the inferences from the evidence adduced fairly support the verdict, this court is powerless to upset the implied findings.

■ The rule is that in reviewing the evidence, all conflicts are resolved in favor of the judgment. ■ Whether the judgment will stand is to be determined only by whether any substantial evidence is found or whether inferences can be fairly drawn that will support the implied findings. ■ Also, if the facts proved will support inferences reasonably deduced therefrom, even though they would support contrary findings, the appellate court cannot substitute its inferences for those of the trial court and order a different judgment. (*Estate* of *Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689] ; *Percin* v. *Easley*, 108 Cal.App.2d 510, 514 [238 P.2d 1025].)

■ A reversal is proper only when the reviewing court finds that reasonable minds would concur that the ultimate facts must be contrary to the findings of the trial court and that a different judgment should be entered. (*Merlino* v. *Southern Pac. Co.*, 132 Cal.App.2d 58, 66 [281 P.2d 583].)

■ The findings of the trial court are determinative on appeal unless, as a matter of law, the evidence is without substantial conflict and the only reasonable inference deducible is contrary to the findings. (*Scholz* v. *Hilbert*, 30 Cal.App.2d 228, 229, 231 [85 P.2d 902].) Appellant's contention is right only so far as saying that the facts she proved and the inferences she draws are as persuasive as those urged by respondent and reasonable minds might disagree with respect thereto. (*Ibid.*; *Thomas* v. *City of Bayshore*, 35 Cal.App.2d 650, 652 [96 P.2d 389].) So final is the judgment that had appellant recovered, the city could not have effected a reversal on the superiority of its proof in quality or quantity. (*Jones* v. *City of Los Angeles*, 104 Cal.App.2d 212, 216 [231 P.2d 167].)

The court committed no prejudicial error. At the trial appellant offered in evidence photostatic copies of ''complaint memoranda, filed by citizens with the Department of Public Works,'' with the purpose of establishing ''that the City had knowledge, both actual and constructive, of a long continued dangerous and defective condition of the sidewalk and it is appellant's contention that such evidence was material to the jury's consideration of the veracity of the witness.'' The facts are that Mr. O'Leary, foreman of District 7 of the Bureau of Street Maintenance, which includes Lyman Place, testified as to a description of the repair work required in each case. He admitted having signed the ''repaired'' notations on the dates indicated. It is observed that counsel for appellant admitted that the complaints did not call for re-

438

pairs on the sidewalks. ■ Also, such photostats could not be used to impeach Mr. O'Leary for the reason that "the foreman admitted his notations and signatures." Moreover, ·appellant did not offer to lay a foundation for showing that the *"memoranda of complaints"* furnish any evidence of knowledge or constructive notice of the defect asserted by appellant. While the latest memorandum of complaint was signed by O'Leary February 5, 1952, yet the "repaired" notation of O'Leary was dated February 8, 1952. ■ The court correctly held that "cracks in the pavement . . . a year and a half before, is too remote to permit the jury to draw an inference that at that time there was a crack in the sidewalk." The earliest date shown for the existence of the alleged defect was "sometime in August, 1953" as testified by appellant's witnesses. The complaint alleges that appellant "tripped and fell on the broken and uneven sidewalk" about July 28, 1953. In that state of her pleading and her proof, how could the offer be material and how could appellant have proved the defect had existed so long prior to her fall as to constitute constructive notice to the city of the defect?

But conceding, *arguendo,* an error in rejecting the offer of the photostats, still there was no prejudice for the reason that their contents had been proved by the testimony of Mr. O'Leary.

Judgment affirmed.

Fox, J., and Ashburn, J., concurred.