Filed 11/15/24  Lee v. Rockstar Staffing CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DANIELLE LEE, | B333855 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV00104) |
| v. | |
| ROCKSTAR STAFFING LLC, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Michael T. Larsen, for Defendant and Appellant.

Kristensen Law Group, John P. Kristensen; Skyler Allen, for Plaintiff and Respondent.

Appellant Rockstar Staffing LLC (Rockstar), a staffing agency, hired plaintiff and respondent Danielle Lee (Lee) and assigned her to work at Mani MBI (DE), LLC dba Malibu Beach Inn (Malibu). Lee has sickle cell anemia and was hospitalized due to a flare-up of her symptoms. While she was in the hospital, Rockstar informed her that she was no longer needed at Malibu. This lawsuit followed. A jury awarded damages on Lee's claim against Rockstar for wrongful termination in violation of public policy but found against her on a claim for disability discrimination.

Rockstar appeals from the judgment. We affirm.

## BACKGROUND

### A. Factual Background

The following facts are taken from the trial evidence. In summarizing the facts, we view the evidence in favor of the judgment. (*King v. U.S. Bank National Assn.* (2020) 53 Cal.App.5th 675, 681.)

Lee has sickle cell anemia, a blood disease. Her red blood cells mutate and become rigid, causing abnormal clotting, reduced blood flow, and injuries to tissue and bone. She suffered painful flare-ups once or twice yearly, sometimes needing a hospital stay. Between flare-ups, Lee was fully functional and "completely normal like anybody else."

Rockstar is a hospitality staffing agency, and Malibu, the operator of a hotel and restaurant, was one of Rockstar's clients. In their contract, Rockstar agreed to "'recruit, screen, interview, and assign its employees . . .'" to work at Malibu.

In May 2019, Lee saw a Rockstar advertisement seeking applicants for restaurant jobs. She applied and was interviewed.

2

She signed an "Employment Acknowledgement," confirming her understanding she was "an employee of Rockstar Staffing . . . ." When Lee was assigned to a client, Rockstar said she would be an employee of both Rockstar and the client.

Rockstar arranged Lee's interview with Malibu, and thereafter, she began working as a hostess. Rockstar instructed Lee that, if she was going to be late for a shift, she must notify both Rockstar and Malibu. Lee's pay stubs indicated that Rockstar paid her wages.

On Monday, July 22, 2019, Lee was hospitalized. She spoke almost daily to Rockstar employees, Carolina Muller or "Vanessa," to report her status. Lee told them about her sickle cell anemia and explained that flare-ups occurred once or twice yearly and sometimes required hospitalization for up to a week. Lee said she expected to return to work by Saturday.

On July 23, 2019, Malibu's human resources manager, Delmy Lopez, asked Charlene Mahoney, Rockstar's co-owner and head of client services, to provide an update. Mahoney replied that Lee was still hospitalized but "thinks she will be able to go back to work this coming weekend . . . ."

On July 24, 2019, Lopez informed Mahoney that Malibu wished to separate from Lee and "bring on more temp hosts.'" The reason was "because [Lee] was going to have attendance issues due to her sickle cell." According to Mahoney, Malibu "knew [Lee] had sickle cell," needed "a stable employee," and thought Lee "was going to be in and out of the hospital." Lopez "said it was something that was prominent with the African American community and that they needed to end her assignment because they weren't going to be able to put her on the schedule."

3

Mahoney did not push back, advocate for Lee, or ask to extend Lee's assignment. In a text message the same day, Mahoney informed Lee that Malibu "'reached out to let us know that their schedule is full now with hosts and that they don't have room to bring you back on.'" Lee was not told she could request an accommodation for her illness.

A few weeks later, when Lee asked Rockstar about jobs, she was told only landscaping or dishwashing jobs were available. Rockstar fulfilled Malibu's request and provided Malibu with employees to replace Lee.

## B.     Procedural Background

Though the parties litigated for nearly three years, we received only a 122-page clerk's transcript, 35 pages of which are the Superior Court's case register. The complaint and other pleadings (including motions that Rockstar argues were denied in error), jury instructions, and trial exhibits are missing, and Rockstar's opening brief contains no procedural history.[1]

The case register indicates that Lee filed a complaint against Rockstar and Malibu in early 2020. Malibu filed a notice of settlement before trial and did not appear at the trial as a party, though some of its employees testified.

A jury trial was conducted in August 2023. Rockstar filed motions for a directed verdict and nonsuit, which were denied.

---

[1]     An opening brief "must summarize the relevant procedural history of the litigation, including 'the nature of the action, the relief sought in the trial court, and the judgment or order appealed from . . . .'" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 9:117 (CACIVAPP Ch. 9-C), citing Cal. Rules of Court, rule 8.204(a)(2)(A).)

4

The jury found in Lee's favor on a cause of action for wrongful termination in violation of public policy but against her on a cause of action for discrimination based upon failure to accommodate her disability. The jury awarded damages of $175,000, and judgment was entered.

Rockstar filed motions for Judgment Notwithstanding the Verdict (JNOV) and a new trial, which were denied. Rockstar appeals from the judgment only.

## DISCUSSION

Most of Rockstar's claims of error assert that substantial evidence did not support the verdict. One category of errors arises from Lee's alleged failure to "prove a prima facie case for Disability Discrimination" and the jury's receipt of incomplete instructions on this claim. A second category of errors concerns Lee's alleged failure to prove Rockstar was her employer. A third category of errors concerns Lee's alleged failure to "prove a prima facie case for Wrongful Termination." Lastly, Rockstar contends its nonsuit, directed verdict, JNOV, and new trial motions were wrongly denied.

Before turning to Rockstar's arguments, we acknowledge certain principles that govern appeals: "(1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) An adequate record is necessary for a reviewing court to understand the positions taken by the parties before the trial court and the basis upon which the court made its decisions. "Failure to provide an adequate record on an issue

5

requires that the issue be resolved against" the appellant. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 (*Hernandez*).)

## A.   Disability Discrimination under FEHA

Rockstar prevailed on Lee's cause of action for disability discrimination. Nevertheless, it argues the jury's verdict in its favor should be vacated "due to prejudicial errors." We disagree.

### 1.   *Governing Law*

Under FEHA, "it is an unlawful employment practice 'to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee' unless the employer demonstrates doing so would impose an undue hardship." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192, quoting Gov. Code, § 12940, subd. (m).) "The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability." (*Ibid.*)

### 2.   *Prejudicial Error*

"Only prejudicial error results in reversal of a judgment. Error is prejudicial when it is probable that the party against whom it was made would have achieved a better result but for the error." (*Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1674, citing Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Casper v. City of Los Angeles* (1956) 140 Cal.App.2d 433, 435 [results of a jury trial "are final where no

6

prejudicial error appears, where there is substantial evidence supporting the verdict . . . ."].)

In this case, Rockstar prevailed on Lee's cause of action for discrimination based upon failure to accommodate her disability. The jury was instructed that Lee had to prove, among other things, that Rockstar's failure to "provide reasonable accommodation was a substantial factor in causing [Lee]'s harm." It found Lee did not prove this element. Even if we were to conclude that other aspects of disability discrimination were unsupported by substantial evidence or the jury received incomplete instructions, Rockstar could not obtain a better result than it already has achieved, having prevailed on the claim. (See *People v. Chutuk* (1912) 18 Cal.App. 768, 770 [defendant was not prejudiced by errors in instruction on charges on which the jury acquitted him], disapproved on unrelated grounds in *People v. Valentine* (1946) 28 Cal.2d 121.) Because the asserted errors concerning the disability discrimination claim were not prejudicial, we decline to consider Rockstar's arguments.

## B.     Wrongful Termination

Rockstar next asserts that the jury's verdict in favor of Lee on her claim for wrongful termination should be vacated. However, Rockstar does not adequately prove this is the case.

### 1.     *Governing Law*

"The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public

policy, and (4) the discharge caused the plaintiff harm." (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 154.)

>    2.    *Rockstar's Failure to Provide an Adequate Record*

Rockstar challenges the sufficiency of the evidence supporting the findings that Rockstar was Lee's employer, that it terminated Lee, and that her illness was a substantial motivating factor in causing her harm.  We review a jury's factual findings for substantial evidence and will reverse a verdict only if it is unsupported by any substantial evidence.  (*Mathews v. Happy Valley Conference Center, Inc.* (2019) 43 Cal.App.5th 236, 251.)  This standard requires us to "look at the entire record on appeal rather than simply considering the evidence cited by a party." (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.)  "'The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record.'  [Citation.]" (*Ibid.*)

We cannot consider the *whole* record where, as here, the jury considered documentary evidence at trial, and that evidence was not provided to us by the appellant.  (See *Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 873–874 (*Sanders*) [where the "vast majority of trial exhibits" were not provided by appellant, record was insufficient to fully consider contention that substantial evidence did not support finding of malice].)  Testimony about an exhibit is not a substitute for the exhibit itself.  (*Id.* at p. 874 ["while we were provided a reporter's transcript, much of the testimony is *about* the exhibits we do not have, which, of course, impedes our review of the transcript"].)  "Whenever the consideration of an exhibit is necessary for a complete understanding of the case, a copy thereof must also be furnished."

8

(*Sherwood v. Superior Court* (1979) 24 Cal.3d 183, 187.) "Where exhibits are missing we will not presume they would undermine the judgment." (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291.)

The record does not include any of the 18 exhibits that were admitted into evidence at trial, and we did not receive a copy of a notice to the Superior Court designating exhibits to be transmitted to us. (See Cal. Rules of Court, rule 8.224(a)(1), (3).) The missing exhibits appear to bear directly on the findings that Rockstar challenges on appeal. For example, Rockstar argues it had "no authority" regarding Malibu's decision to cut ties with Lee when she was in the hospital, and it contends "[t]he unrefuted testimony on the issue of 'end of assignment/firing/termination', *coupled with Exhibit 24*, from [Malibu] employees and former employees, is very persuasive[.]" (Bold text omitted, italics added.) However, Exhibit 24 is not a part of the record. Appellant's failure to meet its burden to present an adequate record for review requires us to affirm the judgment. (*Sanders, supra,* 219 Cal.App.4th at p. 874.)

### 3.     *Rockstar Has Forfeited Its Arguments*

The incomplete record is not the only basis for affirmance. Rockstar's brief also is permeated with material violations of the rules of appellate practice, which we briefly review here.

An appellant must "provide an argument and legal authority to support his contentions." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).) "It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness." (*Ibid*.) A "conclusory presentation, without pertinent argument or an

attempt to apply the law to the circumstances of this case, is inadequate," and the court may treat the issue abandoned. (*Ibid*.)

Arguments must also be supported by appropriate references to the record, which includes providing exact page citations, and failure to comply with this rule permits us to strike affected portions of the brief and deem arguments waived. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) Finally, an appellant must state each point under a separate heading or subheading summarizing the point. (*Petrovich Development Company, LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963, 976, fn. 9, citing Cal. Rules of Court, rule 8.204(a)(1)(B).) Failure to do so forfeits issues that may be discussed in the brief but are not clearly identified by a heading. (*Ibid.)*

An additional requirement applies where an appellate court is tasked with reviewing the record for substantial evidence. A party "'forfeits . . . substantial evidence claims by failing to acknowledge evidence favorable to the judgment.'" (*Kim v. TWA Construction, Inc*. (2022) 78 Cal.App.5th 808, 838 (*Kim*), quoting *Duarte Nursery, Inc. v. California Grape Rootstock Improvement Com.* (2015) 239 Cal.App.4th 1000, 1016.) Thus, "[a]n appellant is required to set forth in the appellate brief all material evidence on the point and not merely appellant's own evidence." (*Ibid*.)

Rockstar's violations of these rules are persistent. For example, Rockstar cites no legal authority concerning the standards of review that govern most of its claims of error. "[T]he standard of review is the compass that guides the appellate court to its decision. It defines and limits the course the court follows

in arriving at its destination." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)  After listing its claims of error, Rockstar merely "asserts"—without citation to law—"that the standard of review for the issues (1), (2), and (3), is substantial evidence.  The standard of review for issue (4) is abuse of discretion."  The failure to cite authority to support these standards is, unfortunately, just one of multiple instances where Rockstar makes arguments unsupported by legal authority.

Furthermore, even though most of its contentions of error require us to apply a substantial evidence standard of review, Rockstar persistently fails to acknowledge evidence favorable to the judgment.  The "Statement of the Facts" section of the opening brief contains conclusory statements, which either omit or vaguely describe evidence that supported Lee's case.[2]  As we will explain in further detail below, Rockstar has forfeited arguments due to its failure to address all of the evidence that supports the judgment.

Finally, Rockstar has made it unnecessarily difficult to understand its arguments.  After failing to provide us with the pleadings and a procedural history, the headings in Rockstar's brief do not summarize the arguments to follow.  Instead, Rockstar provides ambiguous headings like "Five Employees," "Special Jury Instruction," and "Additional Evidence." Nevertheless, we will consider whether its arguments concerning

---

[2]    This excerpt is typical of how Rockstar presented evidence in its Statement of Facts: "Lee was not hired by [Malibu], Lee was with the temp agency.  (1 RT 137).  The [Malibu]/Rockstar agreement phrase 'its employees' were Rockstar, (2 RT 316), and that Lee was not an employee of [Malibu], Lee was an employee of Rockstar.  (2 RT 343). Lee was the employee of both [Malibu] and Rockstar.  (3 RT 631, 638-639)."

the wrongful termination claim have demonstrated reversible error.

### a. "Five Employees"

Rockstar argues that FEHA's enforcement provisions are limited to "employers of five or more persons," and Mahoney's testimony established Rockstar "never had more than four payroll employees during Lee's tenure" at Malibu. (See Gov. Code, § 12926, subd. (d).) It asserts that its two owners should not count toward the five-employee threshold. However, Rockstar fails to support this argument with any legal authority or analysis, and further, fails to acknowledge evidence that supports the judgment. (*Kim, supra,* 78 Cal.App.5th at p. 838.) Accordingly, this point is forfeited.

### b. "Special Jury Instruction"

Rockstar argues that a special jury instruction required the jury to determine whether an employer-employee relationship existed based on factors including but not limited to Rockstar's control over Lee with regard to hiring, firing, supervision/direction, and pay. Rockstar argues that Lee did not present substantial evidence for the jury to find that relevant factors weighed in favor of Rockstar being her employer. It then purports to provide a "a summary of the evidence regarding the factors."

What follows, however, is a multi-page recitation of ultimate facts that are favorable to Rockstar and unsupported by citations to evidence in the record. For example, Rockstar states, "[Malibu] had the exclusive authority to decide whether to hire or not hire Lee as a hostess; Rockstar did not participate or have

any authority to participate in [Malibu's] decision on the hiring of Lee; Rockstar would not have any input as to whether [Malibu] would hire any employee or not; it would be the discretion of [Malibu]. Rockstar never influenced [Malibu's] decision on whether to hire Lee." (Original emphasis omitted.)

As for supporting legal authority, Rockstar names the two cases on which the related jury instruction was based but provides no analysis of them. It also fails to cite any decisions discussing what evidence is required to establish each factor, or what combination of factors is sufficient to establish an employer-employee relationship. Rockstar has forfeited this argument.

Even absent forfeiture, evidence in the partial record supports an employer-employee relationship. When an individual is employed by an agency and assigned to work on the premises of the agency's client, both the agency and the client are employers under FEHA. (*Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1183.) Furthermore, the regulations of the Fair Employment and Housing Counsel, the administrative agency charged with interpreting FEHA, defines an "employee" as "[a]ny individual under the direction and control of an employer under any appointment or contract of hire . . . ." (Cal. Code Regs., tit. 2, § 11008, subd. (c) (former § 7286.5).)

Lee signed an Employee Acknowledgement stating she was Rockstar's employee. A witness read for the jury a portion of the Rockstar-Malibu contract where Rockstar agreed to "assign *its* employees" to work at Malibu, (italics added) and to be responsible for unemployment insurance and worker's compensation benefits for those employees. Lee's paystubs indicated that Rockstar paid her wages, and evidence indicated that Rockstar had some control over her attendance and job

13

duties.  For example, it instructed Lee to notify Rockstar if she was going to be late for a shift, and Rockstar's approval was necessary before Malibu changed Lee's job duties.  From this evidence, the jury could reasonably infer that Rockstar and Lee were employer and employee.

          c.       "Other Jury Instructions"

Rockstar challenges the sufficiency of the evidence related to jury instructions concerning "joint employer" liability, a "non-delegable duty," and its liability for "follow[ing] a recommendation from or relied on facts provided by another person which had discriminatory or retaliatory intent."  Rockstar does not quote any of the instructions in full in its opening brief, instead, either paraphrasing them, sometimes inaccurately, or providing truncated excerpts without sufficient context.  It then makes conclusory arguments, unsupported by any legal authority.[3]  These arguments are forfeited. (*Benach, supra,* 149 Cal.App.4th at p. 852.)

One of Rockstar's arguments seems to be that a "Joint Employer" instruction was properly given, but substantial evidence did not support a finding by the jury in favor of Lee. The instruction stated: "A staffing agency is liable for the

---

[3]     The following sentence is illustrative: "Rockstar could not be liable per the jury instruction that stated that if Rockstar 'followed a recommendation from or relied on facts provided by another person or entity which had discriminatory or retaliatory intent,' (5 RT 1294), since there was absolutely no evidence of any discriminatory intent by any entity, nor was there any evidence that Rockstar followed some alleged recommendation and furthermore the initial requirement of this instruction states that 'the decision to discharge Danielle Lee was made' by MBI AND Rockstar—there is no evidence to support this."

14

discriminatory conduct of a joint employer client if it participates in the discrimination or if it knows or should have known of the client's discrimination but fails to take corrective measures within its control." Rockstar has not acknowledged evidence that supports a finding of liability pursuant to this instruction, and thus, has forfeited its argument. (*Kim, supra,* 78 Cal.App.5th at p. 838.)

Review of the partial record indicates that Malibu informed Rockstar's co-owner Mahoney that its reason for wanting to replace Lee was because it anticipated "attendance issues due to her sickle cell." After learning this, Mahoney promptly and falsely told Lee that Malibu had "no room" to bring her back on duty, and Rockstar recruited and hired Lee's replacement. Had Rockstar not forfeited its argument, we would conclude that the jury could reasonably infer that Rockstar knew of the discrimination but took no corrective action, and thus, was liable for Malibu's discriminatory conduct.

d. "Rockstar Did Not Terminate Lee"

Rockstar argues the "jury had to determine whether Rockstar terminated Lee or that Rockstar influenced or participated in [Malibu's] decision to terminate Lee or that [Malibu] and Rockstar are one business entity," and Lee produced no evidence to support these elements. Rockstar cites no legal authority to support its assertions, such as cases that discuss termination in the context of a worker who is employed by a staffing agency and placed with a client. It again provides no citations to evidence in the record. For example, it argues that Lee failed to refute "Lopez's testimony" but then fails to provide a

15

citation to that testimony.  Rockstar's arguments are forfeited. (*Benach, supra,* 149 Cal.App.4th at p. 852.)

        4.      *"Substantial Motivating Reason for Her Discharge"*

Rockstar argues that evidence was insufficient to support the jury's finding that Lee's disability was a "substantial motivating reason for [her] discharge."  It appears to contend the only evidence to support this element was the fact that Lee's job ended while she was in the hospital, and this evidence was insufficient to permit the inference that Rockstar "had a discriminatory intent to end Lee's job due to Lee's disability."  Rockstar forfeits this argument by failing to address evidence in the record supporting the jury's finding.  (*Kim,* 78 Cal.App.5th at p. 838.)  For example, nowhere does it acknowledge the testimony of its co-owner, Mahoney, who told the jury that Malibu's reason for dismissing Lee was because it expected her to be absent "due to her sickle cell."

Rockstar's argument lacks merit in any event.  It argues that "the court" in *Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 55 (*Zamora*) "noted that, '"as a matter of law, the mere timing of an adverse employment action is insufficient to raise an inference that the employer took an action for an unlawful purpose."'"  Rockstar's reliance on *Zamora* is misplaced.

Rockstar quotes language from the lower court's order that ultimately was reversed, not the appellate court's holding. (*Zamora, supra*, 71 Cal.App.5th at p. 55.)  Moreover, *Zamora* supports the conclusion that substantial evidence supports the finding that Lee's termination was because of her disability. Zamora's employer, a staffing agency, assigned him to a client in

16

a role that required mobility.  (*Id.* at p. 17.)  He injured his knee, (*ibid.*), and while he was on medical leave, he and 48 others were laid off purportedly due to budget cuts.  (*Id.* at p. 22.)  Summary adjudication for the agency was granted on Zamora's wrongful termination claim because, the lower court found, he failed to show he was discharged because of his disability.  (*Id.* at p. 49.)  The Court of Appeal reversed.  It observed there was evidence that the agency's upper management knew of Zamora's disability but failed to accommodate it and engage in the interactive process.  (*Id.* at p. 52.)  Zamora was not informed of available jobs, and the end of his medical leave was imminent.  (*Ibid.*)  "[A] jury could reasonably infer from this evidence that Zamora was laid off because of his disability."  (*Ibid.*)

Here, evidence in the partial record indicates that Mahoney knew Malibu was basing its decision to dismiss Lee on expected absences that would result from her disease.  Mahoney did not resist, even though she knew Lee anticipated returning to work in four days.  Nor did she discuss with Lee accommodations that might be made to allow Lee to perform her host duties.  Instead, she falsely stated that Malibu was fully staffed.  Then, Rockstar obtained Lee's replacement.  The jury could infer from this evidence that Lee was terminated because of her disability.

## C.    Rockstar's Motions

Rockstar contends its nonsuit, directed verdict, JNOV, and new trial motions were denied in error.  We lack jurisdiction to review the order denying the JNOV motion, and the record is inadequate to permit review of the other orders.

A notice of appeal must identify each judgment or order appealed.  (Cal. Rules of Court, rule 8.100(a)(2).)  A judgment is

17

appealable under Code of Civil Procedure section 904.1, subdivision (a)(1), and an order denying a JNOV motion is separately appealable under subdivision (a)(4).  "Where a party seeks to challenge an appealable order issued after a judgment, . . . the filing of a notice of appeal from the judgment alone is insufficient to grant jurisdiction over the separately appealable order."  (*Burch v. CertainTeed Corporation* (2019) 34 Cal.App.5th 341, 347 (*Burch*).)  An "[a]ppellant cannot obtain review of the postjudgment order simply by including the postjudgment proceedings in the record on appeal from the judgment."  (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶¶ 3:119.1—3:119.2 (CACIVAPP Ch. 3-E).)

Nothing in Rockstar's notice of appeal states it intended to appeal from the order denying its motion for JNOV.  Rockstar checked the box on the form notice of appeal indicating it was appealing from the judgment, but it did not check the box indicating it was appealing from an order "under Code of Civil Procedure, § 904.1(a)(3)-(13)."  The October 19, 2023, order denying the JNOV motion is not described, either by name or date.  Although "notice[s] of appeal must be liberally construed" (Cal. Rules of Court, rule 8.100(a)(2)), even a liberal construction of Rockstar's notice would not encompass the order denying its JNOV motion.  (Contrast, *Burch, supra*, 34 Cal.App.5th at p. 347, 348 [court had jurisdiction to review order denying JNOV motion where appellant "wrote that it appealed from a judgment or order entered March 20, 2017, and it checked two boxes indicating appeal from a judgment after jury trial and an order or judgment under Code of Civil Procedure section 904.1, subdivision (a)(3)–(13);" it was "reasonably apparent that defendant sought to

18

appeal the order denying JNOV, as well as the judgment."].) Thus, we lack jurisdiction to consider challenges to this order.

Rockstar, moreover, has failed to meet its burden of providing an adequate appellate record for review of its motions. The trial court's orders denying Rockstar's motions are presumed correct. (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [appellant has the burden to demonstrate error and overcome the presumption of correctness].) To show error, Rockstar was required to provide an adequate record: the motion papers, any opposition, relevant pleadings, reporter's transcripts, and the orders. (See *Mahoney v. Superior Court* (1983) 142 Cal.App.3d 937, 939; *Hernandez, supra,* 78 Cal.App.4th 498, 502.) The nonsuit and directed verdict motions and Lee's opposition are not in the record. As for the JNOV and new trial motions, the clerk's transcript includes Rockstar's motion papers and a minute order, but not Lee's opposition, Rockstar's reply, or the complaint. Because we lack filings needed to review the basis of the trial court's decision, we must affirm its orders. (*Hernandez, supra* 78 Cal.App.4th at p. 502.)

Further, Rockstar has not demonstrated grounds for reversal of the orders denying the motions for nonsuit, directed verdict, and new trial. The sections of its opening brief discussing these motions are bereft of citations to *any* legal authority. We reject Rockstar's improper attempt to incorporate by general reference authorities from its motions, some of which are not even a part of the record. (*McGuan v. Endovascular Technologies, Inc.* (2010) 182 Cal.App.4th 974, 987.) Its arguments are forfeited. (*Benach, supra,* 149 Cal.App.4th at p. 852.)

19

## DISPOSITION

The judgment is affirmed.  Lee shall recover her costs on appeal.


                                                MORI, J.

We concur:



CURREY, P. J.



ZUKIN, J.